[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10834

_____

Agency No. A070-651-451

BING QUAN LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 31, 2018)

Before MARCUS and NEWSOM, Circuit Judges, and MOORE,* District Judge.

MARCUS, Circuit Judge:

---

* Honorable William T. Moore, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

Petitioner Bing Quan Lin seeks review of a decision of the Board of Immigration Appeals ("BIA") denying his motion to reopen removal proceedings. On appeal, Lin raises a variety of claims -- some properly before this Court; some not. As for Lin's constitutional claims, those challenging the order of removal itself, and those addressing the sufficiency of the Immigration Judge's order denying the instant motion, the issues were not properly exhausted in immigration proceedings or are otherwise not properly before us, barring our review. As for Lin's remaining claims challenging the BIA's decision, we cannot say that the BIA abused its discretion or that its opinion lacked reasoned consideration when it denied Lin's motion to reopen. Therefore, the petition must be dismissed in part and denied in part.

I.

A.

This case arises out of removal proceedings initiated by the Attorney General against Lin, a native and citizen of China. Lin entered the United States on December 16, 1991. He has presented materials suggesting that he entered at Honolulu, where he was issued an Alien Registration Number ("A-number") and a form I-122 instructing him to appear before an Immigration Judge ("IJ") at a time "to be determined later." The form gives the name of the applicant for admission as "Ping Chuan LIN." An "Order to Appear [for] Deferred Inspection," scheduling

2

a hearing on December 17, 1991, also appears in the Administrative Record.  In addition, a fingerprint card taken in Honolulu on December 16, 1991, bears the A-number assigned on the I-122 form, the name "LIN Ping Chuan," and a birthdate of April 1, 1955.  Lin claims that he did not understand he was to appear before the Immigration Judge; instead he boarded a plane bound for New York City.

In March 1993, Lin sought asylum.  He says the application paperwork was prepared for him by an unlicensed practitioner of law.  The asylum application gives Lin's name as "Lin, Bing Quan" and his date of birth as April 1, 1956.  That form lists Lin's place and date of arrival in the United States as Hawaii, December 16, 1991.  The application leaves blank spaces for the applicant's A-number, for "[o]ther names used," and for the signature of any preparer.  It also gives Lin's immigration status as "E.W.I.," meaning "entered without inspection."  Lin was issued a new A-number in connection with his asylum application.  The application was unsuccessful.  In June 1997, a Notice to Appear in removal proceedings was issued to Lin for a hearing on December 23, 1997.  The Notice to Appear charged Lin with being "an alien present in the United States who has not been admitted or paroled."  Notice was mailed to an address in Charlotte, North Carolina, and was returned marked unclaimed.  Lin did not appear at that hearing either and was ordered removed in absentia.

3

Lin timely filed a motion to reopen the removal proceedings, his <u>first</u> motion to reopen. Lin claims this motion was also prepared by an unlicensed practitioner of law and that he did not understand its contents. The 1998 motion to reopen was denied by the Immigration Judge because Lin failed to appear at the hearing after being given proper notice, did not provide any reasons for his failure to appear, and demonstrated no exceptional circumstances otherwise warranting reopening. Lin did not appeal the decision denying his first motion to reopen.

Lin continued to reside in the United States. In February 2014, the government approved an I-130 application,[1] filed by Lin's U.S.-citizen son, for adjustment of Lin's immigration status. That application was filed under the A-number issued in connection with Lin's asylum application. Notably, Lin would not be eligible to pursue an adjustment of his status if he had entered the United States without inspection. Rather, in order to be eligible, Lin must have been paroled into the United States. 8 U.S.C. § 1255 (making adjustment of status available to "an alien who was inspected and admitted or paroled into the United States," 8 U.S.C. § 1255(a), or for those entering the United States without inspection who are the beneficiary of an application for adjustment of status filed "on or before April 30, 2001," 8 U.S.C. § 1255(i)(1)(B), which Lin is not).

---

[1] Approval of an I-130 "Petition for Alien Relative" is the first step in obtaining lawful permanent resident status through a U.S.-citizen family member. *See, e.g.*, *I-130, Petition for Alien Relative*, U.S. Citizenship and Immigration Servs., https://www.uscis.gov/i-130 (Sept. 7, 2017).

Having received approval of the I-130, in 2014 Lin filed his second motion to reopen removal proceedings. This time, Lin argued, and attached an affidavit attesting, that he had been paroled into the United States and given an A-number under the erroneously spelled name "Ping Chuan" Lin. Because he had been issued an A-number in connection with that entry, Lin said, and had become an applicant for admission placed in exclusion proceedings, it was inappropriate to order him removed under the subsequently assigned A-number. An Immigration Judge denied Lin's second motion to reopen, finding that there was "[n]o evidence . . . submitted to establish" that Lin was indeed the "Ping Chuan" who had entered the country in 1991, that Lin's affidavit did "not track" the record in his case, and that Lin was a fugitive from justice because he had failed to inform the court of his whereabouts.

Lin then filed his third motion to reopen in February 2016, offering similar arguments about why reopening was appropriate. He included an updated affidavit and a fingerprint analysis showing that fingerprints taken from the person who had entered at Honolulu as "Ping Chuan" Lin matched his own.

B.

In May 2016, an Immigration Judge denied Lin's third motion to reopen his removal proceedings. The handwritten notations on the IJ's denial of the motion are limited in scope but legible. These notations explain that "no appeal was

5

taken" from the denial of Lin's two previous motions to reopen. The additional notations appear to read as follows: "On 2/8/16 a third motion to reopen was filed -- renewing argument denied in 2nd [motion to reopen] (no appeal)[.] This will be denied as untimely [and] because of previously filed motions[.] 8 CFR § 1003.23(b)[illegible][.][2] No showing evidence [and] argument was not previously available[.]"[3] Although a box is checked that explains the motion is denied "for the reasons indicated in the attached decision," no additional decision, separate from the grounds handwritten on the form itself, appears in the certified Administrative Record.

Lin lodged an appeal with the Board of Immigration Appeals. The BIA denied his application in February of this year, explaining the history of Lin's entry, asylum application, and previously denied motions. The BIA agreed with the Immigration Judge's judgment and reasoning. It too specifically concluded that "[Lin]'s additional arguments in his third motion to reopen were not new or

---

[2] In context, this notation almost certainly references 8 C.F.R. § 1003.23(b)(1) ("[A] party may file only . . . one motion to reopen proceedings. . . .  A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal . . . .").

[3] The regulations governing motions to reopen provide that: "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits and other evidentiary material. . . . A motion to reopen will not be granted unless the Immigration Judge is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.23(b)(3).

previously unavailable." The BIA also determined that there was no basis for it to have reopened sua sponte its removal proceedings.

This appeal ensued.

## II.

First, we must determine whether the Court has the power to entertain each of petitioner's claims. *See, e.g.*, *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) ("Federal courts 'are obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking.'" (quoting *Galindo-Del Valle v. Att'y Gen.*, 213 F.3d 594, 599 (11th Cir. 2000))). "We review our subject matter jurisdiction de novo." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

A petitioner contesting a final order of removal must exhaust the administrative immigration process before he may be heard in federal court. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." (emphasis added)). We have held that failure to raise an issue to the BIA constitutes a failure to exhaust. *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016) ("[W]hen a petitioner has neglected to assert an error before the BIA that he later attempts to raise before us, the petitioner has failed to exhaust his administrative remedies." (citing *Amaya-Artunduaga*, 463 F.3d at 1250–51)). This

7

Court has also determined that the failure to exhaust is jurisdictional, "so we lack jurisdiction to consider claims that have not been raised before the BIA." *Sundar v. I.N.S.*, 328 F.3d 1320, 1323 (11th Cir. 2003); *see also Amaya-Artunduaga*, 463 F.3d at 1250 (citing *Sundar*, 328 F.3d at 1323); *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (citing *Amaya-Artunduaga*, 463 F.3d at 1250). Thus, while we are obliged to consider those issues that have been properly presented in immigration proceedings and, where necessary, appealed to the Board of Immigration Appeals, we cannot consider issues that could have been, but were not properly raised in immigration proceedings and appealed to the BIA.

Here, Lin asserts a number of errors in the disposition of his third motion to reopen his removal proceedings as well as in his other motions and in the order of removal itself. However, we lack jurisdiction over Lin's constitutional claims as well as any of the claims unrelated to the third motion to reopen. Plainly, Lin's constitutional claims were of the kind that could have been raised in his immigration proceedings, but he failed to exhaust them. Likewise, we are barred from reviewing petitioner's claims that the Immigration Judge's decision was deficient because it was handwritten and briefly stated, since those claims were never presented to the BIA. Moreover, we cannot consider petitioner's challenges to the order of removal or to the denial of his motions to reopen in 1998 and again in 2014 because he never appealed from any of them.

8

A.

Lin claims that his removal has been ordered in violation of the Fifth Amendment Due Process Clause. First, he says that he never received notice of the 1997 removal hearing. Second, he says the Immigration and Naturalization Service ("INS") failed to follow its own policy to search its records thoroughly for a previous A-number. Lin also asserts that this failure to follow agency policy makes the BIA's refusal to reopen sua sponte legally incorrect, reasoning that "due process requires that proceedings improvidently commenced may be terminated at any time." Finally, he contends that "[a]n Order of Removal which is premised on a false allegation and which produces an unjust result violates due process."

Although constitutional claims sometimes may avoid the requirement of administrative exhaustion, Lin's constitutional arguments were subject to an exhaustion requirement and undeniably were not exhausted. Accordingly, we lack the power to consider them.

The administrative exhaustion requirement may not always prevent consideration of certain constitutional claims that a petitioner has not asserted in immigration proceedings. Thus, we have suggested that "some classes of claims" arising under the immigration laws and alleging constitutional error are not subject to a requirement of administrative exhaustion, while others are. A panel of this Court has explained:

9

> Some courts have indicated in dicta that constitutional challenges to the [Immigration and Nationality Act] and INS procedures and some due process claims do not require exhaustion, because the BIA does not have the power to adjudicate those claims. Those same courts, however, have held that where the claim is within the purview of the BIA which can provide a remedy, the exhaustion requirement applies with full force.

*Sundar*, 328 F.3d at 1325 (internal citations omitted).

Where a procedural due process claim properly falls within the immigration courts' power to review and provide a remedy, the claim must be exhausted before it can be considered by this Court. *See, e.g.*, *id.*; *see also Amaya-Artunduaga*, 463 F.3d at 1251 ("Although we have never specifically determined which due process claims require exhaustion, other circuits have determined that procedural due process claims, as well as procedural errors argued in due process terms, must be raised before the BIA [to be considered on appeal]."). We have applied that principle and declined to review a due process claim raised for the first time in this Court. Thus, in *Amaya-Artunduaga*, we determined that the petitioner's due process claim, regarding the fairness of the Immigration Judge as a neutral factfinder, was "precisely the kind of procedural error which requires exhaustion." 463 F.3d at 1251. Notably, however, those constitutional claims raised for the first time in this Court that address issues beyond the power of the BIA to address in adjudicating an individual's case may not require exhaustion. *See, e.g.*, *Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989).

10

Applying these principles, we hold that Lin was required to administratively exhaust his constitutional claims before raising them in this Court. Each claim is the kind of particularized challenge to process in individual case review that we've deemed subject to the exhaustion requirement in *Amaya-Artunduaga*. Each of his claims could have been addressed by the BIA. He finds constitutional error in the notice issued in his immigration proceedings, in the failure to search records in his immigration proceedings, and in the refusal to reopen in his immigration proceedings. None of these claims raises a larger challenge to the immigration process beyond the power of the BIA to address.

Since Lin's constitutional claims were subject to an exhaustion requirement, we readily conclude that he has not exhausted them. When determining whether exhaustion has occurred, we look to the "substance of the appeal." *Indrawati*, 779 F.3d at 1298 ("[A]dministrative exhaustion requires no specific incantation."). While there need not have been a "well-developed" legal argument to support a claim, Lin must have offered "more than . . . a passing reference to the issue" in order to show he properly exhausted each claim. *Jeune*, 810 F.3d at 800. There must have been enough of an argument to enable the BIA to consider the issue. *See id.* An examination of this record, however, reveals nothing that would have clearly flagged to the BIA for its consideration the issues Lin has now raised in this Court. His memorandum on appeal to the BIA did challenge the proceedings to

11

which Lin was subject, arguing that it was "procedurally improper" to place Lin in removal proceedings. However, that argument makes no mention of due process, the Constitution, or the constitutional claims presented to us concerning notice and agency procedures.

But even if Lin had raised some constitutional claim regarding the failure to grant Lin's motion to reopen over which we could exert jurisdiction, any such claim would still fail on its own terms. Procedural due process claims must assert a deprivation of a constitutionally protected liberty or property interest. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). And, we have previously held that there is "no constitutionally protected interest in purely discretionary forms of relief." *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008). What's more, we have specifically identified both motions to reopen and adjustment of status as discretionary forms of relief as to which there is no constitutionally protected interest. *Id.* ("The decision to grant or deny a motion to reopen or a motion to reconsider is within the discretion of the BIA, and we have recognized that this discretion is very broad. Adjustment of an alien's status likewise is a discretionary form of relief. We have held that the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." (internal citation and quotation omitted)).

12

Because the kinds of constitutional claims raised are subject to an exhaustion requirement, and because Lin has failed to exhaust his constitutional claims before the BIA, we are without the power to consider them.

## B.

Lin also objects to the sufficiency of the Immigration Judge's decision. First, he seems to suggest that there was, or should have been, a more formal decision from the Immigration Judge because the order in the Administrative Record says that it was entered "for the reasons indicated in the attached decision," although nothing was apparently physically attached to the copy of the order. He also attacks the rationale offered by the IJ as not constituting "reasoned consideration" of his claims -- both because the reasons are insufficiently explained and because the reasons fail to address the "crux" of Lin's argument.

We cannot exercise jurisdiction over Lin's claims of error about the sufficiency of the Immigration Judge's reasoning. As the government points out, this Court cannot review those claims if they were not administratively exhausted in the first place by appeal to the BIA. Lin's arguments about the sufficiency of the IJ's reasoning and the purportedly missing "attached" reasoning were never raised in the BIA and have not been administratively exhausted. Again, the petitioner need not show a completely developed argument, but he must present enough to flag the issue and enable the BIA to address the matter. *See Jeune*, 810

13

F.3d at 800.  And, there is nothing in the record to indicate that Lin attempted, even with a passing reference, to raise the sufficiency of the Immigration Judge's notations to the BIA.  In his Notice of Appeal to the BIA, Lin did argue that "[t]he IJ did not discuss whether the decision to deny the motion will prejudice [Lin]." However, that claimed shortcoming -- failing to address the issue of prejudice -- is not raised in this appeal.  No other arguments in Lin's Notice of Appeal to the BIA or in his legal memorandum filed with the BIA assert any error in the sufficiency of the Immigration Judge's order.  Thus, to the extent Lin claims that the Immigration Judge's order reflected inadequate consideration or insufficient explanation, we cannot examine that claim.  In contrast, as we discuss below, we have the power to consider whether the BIA's decision and acceptance of the Immigration Judge's decision constituted "reasoned consideration" of the issues brought to the BIA.

However, even if we could review Lin's claim that the Immigration Judge gave insufficient reasoning, it would fail on the merits.  The decision of an Immigration Judge must "consider the issues raised and announce [a] decision in terms sufficient to enable a reviewing court to perceive that [the Judge] has heard and thought and not merely reacted." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (quotation omitted).  The notations of the Immigration Judge do enable us to perceive that Lin was heard and that a determination was reached that

appropriately took into consideration the factual and legal matters relevant to the motion.

## C.

Finally, to the extent Lin asks this Court to reconsider the propriety and substance of his longstanding removal order and the first and second motions to reopen that order, we cannot engage in that inquiry either. Lin advances several arguments that the removal order was unfair. Thus, for example, he claims that the order is "transparently invalid" and that the order is "subject to remand" because it is "premised on a patently false factual determination." But in *Gaksakuman v. United States Attorney General*, 767 F.3d 1164 (11th Cir. 2014), we observed that we do not have jurisdiction to review earlier trips through immigration proceedings: "Because we conclude that the earlier order [of removal] entered by the BIA was final, that [the petitioner] declined to pursue a timely petition for its review, and that [the petitioner], in his second appeal to the BIA, failed to exhaust his earlier arguments, we hold that we lack jurisdiction to review the earlier order." *Id.* at 1166; *cf. Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (describing that we will not consider issues raised for the first time on appeal from a district court except in certain special circumstances).

In the same way, we decline to review the substance of the 1997 hearing as well as Lin's first and second motions to reopen his removal proceedings. Lin

15

offers no explanation why we should excuse his failure to timely appeal the removal order or the denials of his first two motions to reopen and examine challenges to those decisions for the first time at this late hour.  Thus, we do not reach the merits of claims challenging the 1997 order or the findings by the Immigration Judge on the first and second motions to reopen.

But even if we could evaluate the removal order or the previous motions to reopen, we can discern no reason why the removal order must be subject to reopening.  Even if the order is "premised on a patently false factual determination" (that Lin entered the country without inspection), that determination was reached because of Lin's own asylum application.  In that application, Lin did not provide the name of any preparer, did not provide the A-number he had been issued in Honolulu, and did not provide any alternative name.  Lin also declared under penalty of perjury that the contents of the application were "true and correct to the best of [his] knowledge and belief."  He then failed to appear at his scheduled hearing and did not appeal the denial of his first motion to reopen.  The BIA has wide discretion to deny reopening even where otherwise permissible, and there is no clear indication that the removal order would have been subject to reconsideration.

D.

We do, however, have jurisdiction to review the claims challenging the adequacy and substance of the IJ's and the BIA's holdings that Lin's third motion to reopen was time-barred, number-barred, and lacked any new and previously unavailable evidence.  Generally we have jurisdiction to consider appeals of the grounds upon which the BIA based its decision.  However, when the BIA has been afforded the ability to rest its decision on discretionary grounds and it does so, we cannot review the discretionary grounds upon which the BIA renders a decision. To the extent Lin asks us to overturn the BIA's decision declining to reopen Lin's removal order sua sponte, we cannot engage in that inquiry, although we can consider the other stated reasons for the BIA's decision denying the motion to reopen.

Generally we cannot review decisions of the BIA that are committed to its discretion.  Thus, we have held on several occasions that we lack jurisdiction to review a decision of the BIA not to exercise its power to reopen a case sua sponte. *See, e.g.*, *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1286 (11th Cir. 2016); *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008) ("Neither the statute nor the regulation [giving the BIA power to reopen a case sua sponte] provides any 'meaningful standard against which to judge the agency's exercise of discretion.'").  Constitutional claims related to the BIA's discretionary decisions

17

are different.   We have observed that we may retain jurisdiction where constitutional claims are raised relating to the BIA's refusal to reopen sua sponte. *Id.* at 1294 n.7 ("We note, in passing, that an appellate court may have jurisdiction over constitutional claims related to the BIA's decision not to exercise its sua sponte power."); *see also Butka*, 827 F.3d at 1286 n.7 (noting that statutory limitations on judicial review of immigration decisions are expressly stated not to "preclud[e] review of constitutional claims or questions of law raised upon a petition for review" (quoting 8 U.S.C. § 1252(a)(2)(D))).

In *Mata v. Lynch*, 135 S. Ct. 2150 (2015), the Supreme Court held recently that the courts of appeals have jurisdiction to examine immigration claims that have been rejected pursuant to the statutory requirements for motions to reopen. *Id.* at 2154–55 ("[T]he reason for the BIA's denial makes no difference to the jurisdictional issue.  Whether the BIA rejects the alien's motion to reopen because it comes too late or because it falls short in some other respect, the courts have jurisdiction to review that decision.  Similarly, that jurisdiction remains unchanged if the Board, in addition to denying the alien's statutorily authorized motion, states that it will not exercise its separate sua sponte authority to reopen the case.").  In so holding, the Supreme Court assumed without deciding that the courts of appeals lack jurisdiction to review a BIA decision not to use its sua sponte authority. *Id.* at 2155.

The BIA decision in this case parallels that in *Mata*. There, the BIA order on appeal had, first, denied a motion to reopen as being untimely and not entitled to equitable tolling and, second, declined to use the BIA's power to reopen the removal order sua sponte. *Id.* at 2153. The Supreme Court held that the courts of appeals could exercise jurisdiction over the rejection of the motion as untimely, even while assuming that there was no appellate jurisdiction over the BIA's denial of sua sponte reopening. *Id.* at 2153, 2155.

Here, the BIA's decision offers three nondiscretionary grounds that are reviewable under *Mata* -- that the motion was untimely, numerically barred, and lacking new and previously unavailable evidence. Our jurisdiction also extends to challenges to the legal reasoning offered by the BIA.

III.

To reiterate, the claims properly before this Court are Lin's challenges to the nondiscretionary grounds of decision and the sufficiency of the decision offered by the BIA in denying Lin's third motion to reopen. However, even those claims falling within our power to review must meet a high standard. Under controlling precedent, we are tasked with affirming the BIA's decision if it is based on "reasoned consideration" and shows that the BIA has "made adequate findings" to support its outcome. *Gaksakuman*, 767 F.3d at 1168.

Where, as here, an order of the BIA adopts certain findings of the Immigration Judge, we review both the determination of the BIA and the determination of the IJ. *See Gaksakuman*, 767 F.3d at 1170; *Jeune*, 810 F.3d at 799 ("When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the immigration judge's decision. When the BIA explicitly agrees with the findings of the immigration judge, we review the decision of both the BIA and immigration judge as to those issues." (citation omitted)). Moreover, we review the BIA's decision, and the Immigration Judge's decision to the extent adopted by the BIA, for abuse of discretion. *See, e.g.*, *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009) ("'We review the [BIA's] denial of a motion to reopen removal proceedings for abuse of discretion.' This review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. The moving party bears a heavy burden, as motions to reopen are disfavored, especially in removal proceedings." (first quoting *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007); then citing *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1148 (11th Cir. 2005); *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006); and *INS v. Doherty*, 502 U.S. 314, 323 (1992))).

We review claims of legal error, however, including claims that the BIA did not provide reasoned consideration of its decision, de novo. *See, e.g.*, *Jeune*, 810

20

F.3d at 799 ("[A]n assertion that the agency failed to give reasoned consideration to an issue is a question of law that we review de novo.").

## A.

A petitioner may file one, and only one motion for reopening of an order of removal. 8 U.S.C. § 1229a(c)(7)(A). This motion must be made within 90 days of the removal order's entry, or 180 days after entry of an order of removal entered in absentia where failure to appear was "because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C), (c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(1), (b)(4)(ii). We have held that the 90-day deadline for a motion to reopen is a non-jurisdictional claim-processing rule and is, therefore, subject to equitable tolling. *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1359 (11th Cir. 2013). Typically, equitable tolling of a time deadline requires a showing that the litigant "(1) . . . has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). In addition, an Immigration Judge or the BIA may reopen a removal decision sua sponte at any time. 8 C.F.R. §§ 1003.2(a), 1003.23(b)(1).

The standard for granting a motion to reopen immigration proceedings is high, and an Immigration Judge is afforded significant discretion in deciding whether to do so. Reopening may be warranted only where the movant presents

21

evidence that is new, material, and unavailable when the removal order was entered. 8 C.F.R. §1003.23(b)(3) ("A motion to reopen will not be granted unless the Immigration Judge is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."). The reviewing IJ and the BIA have discretion to deny reopening even where the movant has made a prima facie case that reopening would otherwise be appropriate. 8 C.F.R. § 1003.23(b)(3); 8 C.F.R. § 1003.2(a). Thus, going beyond the numerical and time bars, the BIA may deny a motion for at least three separate reasons: "1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001) (citing *Doherty*, 502 U.S. at 323 ).

Here, the BIA unequivocally upheld the reasoning of the IJ: "The Immigration Judge correctly determined that [Lin's] motion to reopen was untimely and numerically barred . . . ." The BIA also agreed with the Immigration Judge that Lin's "additional arguments in his third motion to reopen were not new or previously unavailable." The notations of the Immigration Judge observed that Lin had made "no showing [his] evidence [and] argument" were "not previously available."

That decision did not amount to an abuse of discretion. Again, the time limit on motions to reopen is subject to equitable tolling. *See Avila-Santoyo*, 713 F.3d at 1365. But even assuming, arguendo, that some ground for equitable tolling was present, the BIA still had reason to reject Lin's third motion to reopen. The BIA found that Lin's motion to reopen could not be granted because the arguments offered were "not new or previously unavailable."

Lin argues, nevertheless, that the Immigration Judge erred in finding, and the BIA erred in adopting the finding, that the fingerprint report Lin offered was not new and previously unavailable evidence. Lin says that the Immigration Judge must have believed that the fingerprint report "was in fact available in September 2014," when Lin's second motion to reopen was filed. This is a challenge to the statutory and regulatory grounds for the BIA's denial and hence one of the claims over which this Court has jurisdiction.

This Court has previously determined that the BIA abused its discretion when it denied, for failure to present previously unavailable evidence, motions to reopen presenting chronologically new evidence. In *Li v. United States Attorney General*, 488 F.3d 1371 (11th Cir. 2007), a Chinese national submitted evidence of intensified enforcement of China's one-child policy, including affidavits and State Department reports from years post-dating her removal order. *Id.* at 1375. We found that the petitioner had "evidence of changed circumstances that was not

23

available at her original removal proceedings" and the BIA's refusal to reopen was an abuse of discretion. *Id.* We found the same thing in *Jiang v. United States Attorney General*, 568 F.3d 1252 (11th Cir. 2009), which was "startlingly" like *Li*. *Id.* at 1257.

However, we have refused to recognize an abuse of discretion in the BIA's strict application of evidentiary hurdles. Thus, in *Ali v. United States Attorney General*, 443 F.3d 804 (11th Cir. 2006), a panel of this Court found no abuse of discretion where the BIA refused to consider an unattested photocopy -- which included a copy of a signature and seal -- of a pardon from criminal charges that had made the petitioner removable. *Id.* at 812. There, we ruled that the petitioner "offer[ed] no compelling reason why he could not have obtained and submitted a properly certified copy of his pardon." *Id.*

This case is comparable to *Ali*, where we could not discern an abuse of discretion. Like the petitioner there, Lin has not offered any reason, let alone a compelling one, why he could not have obtained a fingerprint analysis before his removal order, or in <u>either</u> of his first two motions to reopen. It is not like the chronologically new and previously unavailable evidence in *Li* and *Jiang*, where State Department reports on which the motions relied were not in existence and could not have been when the underlying orders were entered. Here, the

24

fingerprint analysis was newly obtained but could have been sought and presented years earlier.  Accordingly, we discern no abuse of discretion in the BIA's finding.

B.

Lin also says that the BIA's decision did not offer "reasoned consideration" of his claims.  This is an allegation of legal error and, accordingly, we review it de novo.  *See, e.g.*, *Jeune*, 810 F.3d at 799 ("[A]n assertion that the agency failed to give reasoned consideration to an issue is a question of law that we review de novo.").  Where the BIA has not given "reasoned consideration" of a question or made "adequate findings," we remand for further proceedings.  *See, e.g.*, *Gaksakuman*, 767 F.3d at 1168.

We have previously described the standard for "reasoned consideration" in clear terms:

> A reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence.  Rather, it looks to see whether the agency has considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.  Yet, while the agency is required to consider all evidence that a petitioner has submitted, it need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented.  Ultimately, the agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record.

*Jeune*, 810 F.3d at 803 (quotations and citations omitted).

25

Lin's arguments can be broken down into two essential claims: (1) that the handwritten, brief reasoning of the Immigration Judge was inadequate and did not provide enough explanation for the BIA reasonably to review; and (2) that the BIA failed to address the central problem raised by Lin -- that he was improperly given a second A-number under which removal was improperly ordered. But, the BIA did give "reasoned consideration" to Lin's claims.

i.

Lin argues, in various ways, that the BIA improperly based its decision on the brief and handwritten notes of the Immigration Judge. None of these arguments suggest the absence of reasoned consideration as defined by our precedent. What is central to a showing of reasoned consideration is that the reasoning of the Immigration Judge and the BIA is logical and can be reviewed for error. Lin cites *Jeune* and other precedent for the mandate that a decision showing "reasoned consideration" must be capable of assessment by a reviewing court. We agree. But here, the BIA's order is capable of review. It lists the basic facts of the case, references the relevant regulatory and statutory provisions on which the order is based, and accepts several grounds on which the Immigration Judge properly denied the motion. Likewise, the Immigration Judge's notes are brief but capable of review, including much of the crucial information (the facts surrounding the

procedural history, regulatory provisions, and grounds of decision) with which the BIA agreed.

Lin also seems to say that meaningful review is not possible because the Immigration Judge used a form that references an "attached decision," but provided handwritten notes instead of anything "attached." Even assuming there must be something "attached" because of the wording of the form, this argument could have been, but was not, raised before the BIA and has not been administratively exhausted. *See supra* Part II.

ii.

Finally, Lin argues that the BIA opinion failed to show reasoned consideration of his appeal because it did not address the central issue he raised:

> [T]he crux of Mr. Lin's claim is that, in denying his Motion to Reopen to Terminate Proceedings Improvidently Commenced, the [Immigration Judge] ignored Mr. Lin's argument that the proceedings he seeks to close were commenced under an A-number which never should have been issued, and were based on an allegation (that Mr. Lin had entered the U.S. in 1991 without inspection) which the [Immigration Judge] should have found to be false . . . .

As support, Lin cites to *Seck v. United States Attorney General*, 663 F.3d 1356 (11th Cir. 2011), where we rejected one challenge to the sufficiency of a BIA decision, holding that "the BIA's order of removal did in fact acknowledge and address the crux of [the] claim." *Id.* at 1366 (reversing the BIA order on other grounds).

The legal standard articulated by Lin is inapplicable and ineffective.  First, *Seck* did not announce a rule that the BIA must address the "crux" of every claim in order to demonstrate that it gave reasoned consideration.  Instead, it announced grounds on which we upheld the portion of the BIA order in question.  Second, *Seck* was a direct appeal from an order of removal where the arguments against removal had to be addressed; it was not, as here, an appeal from a motion to <u>reopen</u> subject to the discretion of the BIA.  The BIA must "consider[] the issues raised" and cannot "provide[] justifications for its decision which are unreasonable and which do not respond to any arguments in the record."  *Jeune*, 810 F.3d at 803.  We cannot say that the BIA's decision was unreasonable or unresponsive.  The BIA did acknowledge the facts of Lin's case and offered multiple grounds for its rejection, which was sufficient to address Lin's central claim.  Quite simply, the BIA adequately addressed the crux of Lin's motion.  The BIA "heard and thought," *id.*, and had reasonable grounds -- indeed, multiple reasonable grounds -- upon which to reject Lin's claims.

In short, as for those claims properly before this Court, we find nothing to indicate that the BIA abused its discretion or demonstrated a lack of reasoned consideration.  Therefore, we must uphold its order.

**PETITION DISMISSED in part and DENIED in part.**

28