[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10258
Non-Argument Calendar
_____

Agency No. A098-869-151


ANDREW WIJAYA,
STEFFANY MEILAN,

                                                              Petitioners,

versus


U.S. ATTORNEY GENERAL,

                                                              Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 26, 2021)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Andrew Wijaya and his wife Steffany Meilan, both natives and citizens of Indonesia, petition for review of the Board of Immigration Appeals's ("BIA") summary affirmance of the Immigration Judge's ("IJ") order denying Wijaya's motion to reopen his removal proceedings.[1]  Wijaya argues that the IJ did not give reasoned consideration to his evidence and that the BIA and IJ violated due process by ignoring the persuasive authority that he relied on in his motion to reopen and his appeal.  After careful review, we deny the petition for review.

**I.**

Wijaya and Meilan entered the United States in August 2004 on nonimmigrant visas, which permitted them to remain in the United States as visitors until July 13, 2005.  In September 2005, the Department of Homeland Security ("DHS") issued them notices to appear, charging them as removable because they were admitted to the United States as nonimmigrants and remained in the United States for a time longer than permitted.

Wijaya applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, on the grounds that he and his wife had been

---

[1] Meilan was considered a "rider" on Wijaya's original asylum application, and she filed a motion to reopen that was consolidated with his.  For ease of reference, we refer to the petitioners collectively as Wijaya.

2

persecuted due to their Chinese ethnicity and Christian religion. *See* 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A).

In November 2006, Wijaya entered into an agreement with DHS in which he conceded removability and agreed to withdraw his application, waive any appeal, and voluntarily depart within 120 days. An IJ issued an order granting voluntary departure in lieu of removal and noting that Wijaya's asylum application had been withdrawn with prejudice.

In March 2019, Wijaya moved to reopen his removal proceedings based on the deterioration of conditions in Indonesia for evangelical Christians. Based on a multi-page block quote from *Sihotang v. Sessions*, 900 F.3d 46 (1st Cir. 2018), he appeared to argue that the conditions had deteriorated due to the growth of Sharia law and Muslim extremist activities against Christian groups. His quotation from *Sihotang* made passing references to Indonesia's proselytizing ban and blasphemy law. He also noted that, in *Sihotang*, the First Circuit distinguished the petitioner's case from others due to his public religious displays, based on his evangelicalism. Wijaya argued that anti-Christian violence and religious intolerance had surged in Indonesia. Based on *Sihotang*, he asserted that there was a fundamental change in circumstances for Chinese Christians who proselytized.

Wijaya provided an affidavit, in which he stated the following. He and his wife applied for asylum because they had been threatened, harassed, and physically

3

harmed in Indonesia due to their Chinese ethnicity and evangelical Christian religion. Their attorney told them to sign a piece of paper, which he did not know until later was an agreement to withdraw his application for asylum and leave the United States voluntarily. He did not leave the United States because he had medical conditions that made him unfit for flying, and DHS had deferred his deportation based on that condition. However, it had denied his latest request for a stay of removal. He feared returning to Indonesia because, since the removal proceedings in 2006, there had been a drastic increase in religious intolerance against Christians and proselytizing, a core tenet of his belief, was criminalized.

Wijaya attached to his motion several post-2007 news articles recounting incidents of harassment or violence against Christian groups and the conviction of Christians or others who "insult[ed]" Islam under Indonesia's blasphemy law. He also attached the 2017 and 2007 International Religious Freedom Reports for Indonesia. The 2017 report indicated that Christianity was not an identified religion for purposes of the country's blasphemy law and referenced a conviction of a Christian for blasphemy. However, it also identified the president's support for religious tolerance and steps taken by the government to resolve longstanding religious disputes. The report referenced a "proselytizing ban," but only in the context of a Muslim sect's practices.

4

The 2007 report indicated that the Indonesian government generally respected the freedom of religion and generally contributed to the free practice of religion but noted the government's tolerance of extremist groups that used violence and intimidation against religious groups. It reported a few incidents of abuse of religious freedom against Christians, such as the arrest of eight people for disseminating a Christian "prayer training" video, the 2005 arrest of a Christian engaged in proselytizing, and the 2005 arrest of individuals for attempting to convert children. The report stated that "notable efforts" had been made to build interfaith relations but indicated that there were abuses and discrimination against individuals and groups based on their religious beliefs or practices.

The IJ denied Wijaya's motion to reopen, finding that the motion was untimely and that Wijaya had not demonstrated materially changed country conditions such that the time bar would not apply. With regard to *Sihotang*, the IJ noted the motion's reliance on the case but stated that the First Circuit case was not binding on its decision. The IJ noted Wijaya's argument that escalated violence against evangelical Christians constituted a material change in country conditions. However, the IJ found that the evidence of violence against Christians reflected country conditions substantially similar to those at the time of Wijaya's original removal proceedings, noting reports of abuse of religious freedom across Indonesia prior to 2007. The IJ stated that a comparison of Wijaya's evidence to evidence

5

from around the time of his removal proceedings showed that the violence and harassment that Christians were subjected to had not changed materially. It found that the evidence of specific instances of violence and targeting of Christians showed an increase in the prevalence of religious intolerance but that this change was only "incremental or incidental" and, therefore, was not substantial enough to constitute a change in conditions.

Wijaya appealed to the BIA, arguing that the IJ's decision was legally erroneous and an abuse of discretion. He argued that the IJ had a duty to consider precedent from other circuits, and he repeated his argument based on *Sihotang* and *Liem v. Att'y Gen.*, 921 F.3d 388 (3d Cir. 2019), which interpreted *Sihotang*'s reasoning as applying to all Christians. He asserted that these cases should be reviewed when addressing an issue of first impression and that there was no indication that the IJ even considered *Sihotang*.

Next, Wijaya argued that the IJ erred in failing to consider the arguments and evidence support of his motion. He argued that "the IJ wholly failed to evaluate whether and to what extent there [was] a meaningful distinction between Christians who practice their faith in private and evangelical Christians (such as the petitioner)."

The BIA summarily affirmed. Wijaya now petitions this Court for review of the denial of reopening of his removal proceedings.

**II.**

Wijaya argues, first, that the BIA and IJ violated due process by disregarding the persuasive authority in *Sihotang* and *Liem*. He argues that, because this Court has not published any cases regarding the conditions faced by evangelical Christians in Indonesia, the agency was required to look to—and follow—other circuits' opinions. Next, he argues that the IJ failed to give reasoned consideration to his arguments and evidence showing that country conditions were deteriorating in particular for evangelical Christians due to Indonesia's increased enforcement of its blasphemy laws.[2] We address these arguments in turn.

**A.**

An individual subject to a removal order may move to reopen his removal proceedings but must do so within 90 days of the date of the BIA's final administrative removal order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). However, the 90-day deadline does not apply if the motion is based on evidence of changed country conditions in the movant's home country that could not have been produced at the previous hearing. *Id.* §1229a(c)(7)(C)(ii).

---

[2] The government argues that we do not have jurisdiction to consider this argument because Wijaya did not exhaust it before the agency. *See* 8 U.S.C. § 1252(d)(1). However, Wijaya was not required to exhaust his reasoned consideration argument before the IJ, as it did not exist until the IJ rendered its decision, and Wijaya did raise the argument in his appeal to the BIA. *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). Accordingly, this argument is properly exhausted and we have jurisdiction to consider it.

7

The Fifth Amendment entitles petitioners in removal proceedings to due process of law, including notice and an opportunity to be heard in their removal proceedings. *See Frech v. U.S. Att'y Gen.*, 491 F.3d 1277, 1281 (11th Cir. 2007); *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009). However, due-process claims must assert a deprivation of a constitutionally protected liberty or property interest. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 868-69 (11th Cir. 2018). There is no constitutionally protected interest in purely discretionary forms of relief, such as motions to reopen. *Id.*

Wijaya cannot raise a due-process claim based on the agency's disregard of persuasive authority because he does not have a constitutionally protected interest in a motion-to-reopen proceeding. *See id.* Moreover, as the IJ noted in its order, the agency is not bound by law from circuits other than this one when deciding cases arising here. *See Matter of Olivares-Martinez*, 23 I. & N. Dec. 148, 149 (BIA 2001) ("The Board historically follows a court's precedent in cases arising in that circuit.")

**B.**

When the BIA summarily affirms the IJ's decision without opinion, we review the IJ's opinion. *Ortiz-Bouchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1355 n.2 (11th Cir. 2013). We review *de novo* whether the IJ gave reasoned consideration to an immigration applicant's claims. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).

We may grant a petition for review, vacate an agency decision, and remand for further proceedings if the agency's decision is "so lacking in reasoned consideration and explanation that meaningful review [is] impossible." *Indrawati*, 779 F.3d at 1302. In a reasoned-consideration inquiry, we look to ensure that that IJ considered the issues raised and announced its decision "in terms sufficient to enable review." *Id.* Reasoned-consideration review is not a review for whether the agency findings have evidentiary support, but only for whether the decision is "so fundamentally incomplete," in light of the facts and claims presented in the case, "that a review of legal and factual determinations would be quixotic." *Id.* The IJ, while required to consider all the evidence submitted, need not specifically address each piece of evidence presented. *Id.*

The IJ gave reasoned consideration to Wijaya's motion. As noted above, the IJ was not bound to follow out-of-circuit precedent. And, although the IJ did not reach the same result as the First Circuit did in *Sihotang*, nothing in the IJ's decision indicates that it did not read Wijaya's arguments in the context of *Sihotang*'s reasoning or otherwise disregarded the evidence cited in that decision. Rather, the IJ correctly identified Wijaya's fear as being based on escalating violence against evangelical Christians in Indonesia. However, after reviewing the evidence, the IJ found that Christians were being harmed "in a similar manner as they previously were in 2007," pointing to evidence of attacks prior to and near the time of the

9

removal proceedings. While the IJ did not specifically reference a distinction between evangelical and non-evangelical Christians, it was not required to address every aspect of the evidence Wijaya presented. *See Indrawati*, 779 F.3d at 1302. Further, although Wijaya pointed to *Sihotang*'s conclusion that conditions had worsened specifically for evangelical Christians, most of his evidence did not make such a distinction, and his arguments to the IJ did not stress the application of the blasphemy law as he now does in his petition. The IJ's detailed order shows that it considered the evidence and arguments before it and came to a reasoned decision. *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 804 (11th Cir. 2016) ("That the [IJ] reached a conclusion different from that of the Petitioner regarding the import of the background evidence does not mean that the [IJ's] decision was not supported by reasoned consideration."). Accordingly, we deny Wijaya's petition for review of the denial of his motion to reopen his removal proceedings.

**PETITION DENIED.**

10