[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11584

Non-Argument Calendar

_____

EULALIO CASTANON PEREZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A070-799-437

_____

Before JILL PRYOR, BRANCH and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner Eulalio Castanon Perez, a citizen of Guatemala, seeks review of the final order of the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") (collectively, "Agency") denial of special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA") § 203, Pub. L. No. 105-100, 111 Stat. 2160 (1997), *as amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997).[1] He argues that the Agency failed to apply the proper legal standard in concluding that he was subject to the persecutor bar in the Immigration and Nationality Act ("INA") § 241(b)(3)(B)(i), 8 U.S.C. § 1231(b)(3)(B)(i). He also asserts that the BIA engaged in *de novo* factfinding and did not give reasoned consideration to his arguments. Having read the parties' briefs and reviewed the record, we dismiss the petition in part and deny the petition in part.

## I.

"We review only the BIA's decision except to the extent the BIA expressly adopts the IJ's opinion or reasoning." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). When the BIA issues its own opinion and relies on the IJ's reasoning without

---

[1] Castanon Perez also sought asylum and related relief during his removal proceedings, but he has expressly waived any appellate challenge to the denial of non-NACARA relief.

expressly adopting the IJ's opinion, we review the IJ's decision "to the extent that the BIA found that the IJ's reasons were supported by the record," and we review the BIA's opinion "with regard to those matters on which it rendered its own opinion and reasoning." *Id.* (quotation marks omitted).

Generally, we lack jurisdiction over any decision regarding discretionary forms of relief, such as special rule cancellation of removal under NACARA. INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B); NACARA § 203(b) (stating that INA § 242(a)(2)(B) applies to NACARA). However, we retain jurisdiction over "constitutional claims or questions of law." INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). While we lack jurisdiction over "factual challenges to denials of" discretionary relief, we retain jurisdiction over "constitutional and legal challenges to the denial of that relief, including review of mixed questions of law and fact." *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1275-76 (11th Cir. 2020) (*en banc*), *cert. granted, Patel v. Garland*, ___ U.S. ___, 141 S. Ct. 2850 (2021). Further, we retain jurisdiction over "the application of a legal standard to undisputed or established facts." *Id.* at 1275 (quotation marks omitted). However, "a party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction." *Id.* at 1272.

## II.

Section 203 of NACARA provides that certain nationals from Guatemala are eligible to apply for special rule cancellation of removal under § 240A of the INA. NACARA § 203(a)-(b); INA

§ 240A, 8 U.S.C. § 1229b. The applicant bears the burden to establish that he meets all the applicable requirements by a preponderance of the evidence. 8 C.F.R. §§ 1240.8(d), 1240.64(a). If a NACARA applicant demonstrates that he satisfies NACARA's criteria, he may still be ineligible for cancellation of removal if he falls within one of the mandatory bars alluded to in INA § 240A. INA § 240A(c), 8 U.S.C.§ 1229b(c); 8 C.F.R. § 1240.66(a).

The "persecutor bar" provides that an alien is ineligible for special rule cancellation "if the Attorney General decides that" he "ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion." INA § 240A(c)(5), 8 U.S.C.§ 1229b(c)(5); INA § 241(b)(3)(B)(i), 8 U.S.C. § 1231(b)(3)(B)(i). If there is evidence that grounds for mandatory denial "may apply," such as the persecutor bar, the alien has the burden of proving by a preponderance of the evidence that the grounds do not apply. 8 C.F.R. § 1240.8(d); *Chen v. U.S. Att'y Gen.*, 513 F.3d 1255, 1257 (11th Cir. 2008). Although the statute does not define "assisting" or "participating" in persecution, we have concluded that whether the persecutor bar applies "is a particularized, fact-specific inquiry into whether the applicant's personal conduct was merely indirect, peripheral and inconsequential association or was active, direct and integral to the underlying persecution." *Chen*, 513 F.3d at 1259.

In *Chen*, we determined that the petitioner's testimony indicated that she had played "a pivotal role" in the underlying

persecution because, as a guard, she prevented women from escaping confinements holding them for forced abortions—even though her job had non-persecutory aspects and she, in fact, helped one woman escape. *Id.* at 1259-61. In so deciding, we considered that Chen voluntarily took the job; understood that the authorities were subjecting these women to forced abortions; and monitored the detained pregnant women, including having access to their rooms. *Id.* at 1260. We reasoned that "[d]etention of an individual . . . is often an essential predicate to performing the act of persecution. Those who perform the detention—whether by the use of force, threat of force, or expression of authority meant to dominate and control—are assisting in the underlying persecution." *Id.* *See also Matter of D-R-*, 27 I. & N. Dec. 105, 120 (BIA 2017) (concluding that, in determining an alien's assistance or participation in persecution, the "standard is one that considers (1) the nexus between the alien's role, acts, or inaction, and the extrajudicial killing; and (2) his scienter, meaning his prior or contemporaneous knowledge of the killing").

As an initial matter, we review both Agency's decisions with respect to the persecutor bar's application because the BIA expressly affirmed the IJ's application of this bar. We review the BIA's opinion exclusively to the extent that it concluded that no exception for duress or coercion applied because, on this matter, it employed its own reasoning. As a second initial matter, while we have jurisdiction to consider the application of the *Chen* standard to the undisputed facts, Castanon Perez's assertion that he guarded

arrestees only after their torture is a factual dispute over which we lack jurisdiction.  As a final initial matter, Castanon Perez has abandoned his arguments to the BIA that the persecutor bar did not apply because he was a soldier in a civil war and was not an internationally recognized persecutor.

We conclude from the record that Castanon Perez's argument that the Agency did not apply the correct legal standard is meritless.  The Agency cited *Chen* in its decisions, and the BIA expressly affirmed the IJ's application of *Chen* to the facts of this case. The IJ expressly found that Castanon Perez guarded villagers at the military base and was present when villagers were killed by military battalions, and it expressly quoted *Chen* for the proposition that guarding confined individuals was essential to their persecution.  Here, consistent with *Chen*, the IJ looked to Castanon Perez's specific conduct as a guard and considered whether his actions were integral to the arrestees' persecution.  The IJ found that the persecutor bar may apply, and Castanon Perez fails to sustain his burden by a preponderance of the evidence to show that the grounds for mandatory denial do not apply.

As to the application of *Chen*, we conclude that the Agency properly concluded that the persecutor bar may apply because Castanon Perez acted as a guard to people who he knew were being persecuted.  Castanon Perez's argument that the IJ merely applied a general rule under *Chen* is raised improperly for the first time in his reply brief, and we do not consider it.  Accordingly, as to this issue, we deny his petition in part and dismiss his petition in part.

### III.

The BIA cannot engage in *de novo* factfinding, and when it does so, it commits legal error. 8 C.F.R. § 1003.1(d)(3); *Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1314 (11th Cir. 2013). Rather, the BIA reviews the IJ's findings only for clear error, and it reviews "questions of law, discretion, and judgment and all other issues" *de novo*. 8 C.F.R. § 1003.1(d)(3)(i)-(ii). Accordingly, the IJ makes the factual findings forming "the factual basis for the decision under review," and the BIA's reversal of an IJ's factual determination requires a finding of clear error. *Zhu*, 703 F.3d at 1312 (quotation marks omitted); *Meridor v. U.S. Att'y Gen.*, 891 F.3d 1302, 1306 (11th Cir. 2018). Both "[t]he BIA and the IJ must consider all evidence introduced by the applicant." *Seck*, 663 F.3d at 1364 (quotation marks omitted). We have jurisdiction over this issue because whether the BIA engaged in *de novo* factfinding is a legal issue. *See Zhu*, 703 F.3d at 1314.

In *Zhu*, the BIA cited caselaw for the proposition that it could review *de novo* whether an alien faced a reasonable possibility of future harm, and it rejected the IJ's finding on this matter. *Zhu*, 703 F.3d at 1307, 1314-15. We also concluded that the BIA had reviewed *de novo* "one of the factual building blocks of the IJ's prediction, which was a finding of fact about *present* conditions and circumstances in" the country of removal. *Id.* at 1314 (emphasis in original); *accord Meridor*, 891 F.3d at 1305-07 (finding reversable error where the BIA, without a finding of clear error, made an

alternative holding that "simply disagreed" with an IJ's risk-of-harm determination).

Here, we conclude from the record that the BIA's statements—that Castanon Perez testified to (1) witnessing the El Quiché massacres and (2) keeping captured guerillas under armed guard—with which Castanon Perez takes issue, do not constitute impermissible factfinding. First, the BIA properly acknowledged that it reviewed the IJ's factual findings for clear error. Second, as discussed previously, the BIA expressly affirmed the IJ's conclusion that the persecutor bar applied, and its summary of Castanon Perez's testimony merely provided support for this affirmance, which is not inappropriate given the BIA's obligation to consider all evidence. Third, the factual foundations for the BIA's statements were explicitly found by the IJ and present in Castanon Perez's testimony, and the BIA's statements do not reject or contradict any of the IJ's findings. Accordingly, we deny the petition as to this issue.

## IV.

We review de *novo* whether the BIA expressed reasoned consideration for its decision. *Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018). Absent reasoned consideration and adequate findings, we must remand for further proceedings. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).

In rendering its decision, the BIA is not required to discuss every piece of evidence presented if it has given reasoned consideration and made adequate findings. *Ali*, 931 F.3d at 1333-34. The

BIA must leave us with the conviction that it "heard and thought about the case and not merely reacted." *Id.* at 1333 (quotation marks omitted, alteration adopted). To meet this burden, the BIA is required to discuss "highly relevant evidence," which we have defined as evidence that would compel a different outcome if discussed. *Id.* at 1334 (quotation marks omitted). We have held that the BIA's analysis is sufficient to show reasoned consideration when it lists the basic facts of the case, refers to relevant statutory and regulatory authority, and accepts several grounds on which the IJ denied the petitioner's motion to reopen. *Lin*, 881 F.3d at 874-75. On the other hand, the BIA fails to give reasoned consideration to a claim when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 874 (quotation marks omitted). We have jurisdiction over this issue because reasoned consideration is a legal question. *See Lin*, 881 F.3d at 872.

Contrary to Castanon Perez's arguments, and for the reasons discussed in the prior issue, the record demonstrates that the BIA did not misstate the record. Further, we conclude that the BIA sufficiently rejected Castanon Perez's argument under *Chen* that he did not participate in persecution. The BIA expressly affirmed the IJ's application of *Chen* in concluding the Castanon Perez did participate in persecution after recognizing his argument that his acts were "non-persecutorial" in nature. Castanon Perez's brief to the BIA emphasized the involuntary nature of his service, and

given this emphasis, the BIA's rejection of his claims under the *Negusie* rationale is not unreasonable. The BIA had already determined, as a threshold matter, that the persecutor bar applied to Castanon Perez, and *Negusie* directly rejected Castanon Perez's argument that his conscription was a proper defense. *See Matter of Negusie*, 28 I. & N. Dec. 129, 125 (A.G. 2020) (concluding that there is no exception to the INA's persecutor bar for conduct that resulted from duress or coercion).

Based on the aforementioned reasons, we deny the petition with respect to this issue and we dismiss the petition in part and, in all other respects, deny the petition for review.

**DISMISSED IN PART, PETITION FOR REVIEW DENIED IN PART**.