[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10183
Non-Argument Calendar
_____

Agency No. A088-011-831


ELVIN ANTONIO BRIONES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 26, 2018)

Before BRANCH, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

Elvin Antonio Briones, a native and citizen of Nicaragua, seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his claim for withholding of removal under the Immigration and Nationality Act ("INA").  Briones contends the IJ and the BIA erred in concluding he was not entitled to withholding of removal based on persecution on account of his political opinion.  After review, we deny Briones's petition.

## I.  BACKGROUND

On November 21, 2005, Briones entered the United States on a B2 visitor visa, with authorization to remain for one month.  In September 2010, the Department of Homeland Security issued Briones a Notice to Appear ("NTA"), which charged him with being removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted.  Briones admitted the allegations in his NTA and conceded removability.

On October 19, 2010, Briones filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") based on his political opinion.  Briones's application claimed that while in Nicaragua, members of the Sandinista Party targeted him with threats, harassment, and several attacks due to his participation in the Liberal Party and that he feared the Sandinistas would target him again if he returned to Nicaragua.

2

After a hearing, the IJ denied Briones's claims.  The IJ concluded that Briones's asylum claim was time-barred and that Briones was ineligible for withholding of removal and CAT relief.  The IJ found Briones credible, but determined, based on the totality of the evidence, that Briones had not suffered past harm in Nicaragua rising to the level of persecution required for withholding of removal and that Briones had not shown that his fear of future persecution was objectively reasonable.

The BIA affirmed the IJ's decision, noting that Briones had abandoned his asylum and CAT claims by failing to challenge them on appeal.[1]  As to withholding of removal, the BIA agreed with the IJ that Briones had not shown past persecution or an objectively reasonable fear of future harm.

## II.  STANDARD OF REVIEW

Because the BIA did not expressly adopt the IJ's decision, but did explicitly agree with the IJ's findings that Briones had not shown past persecution or an objectively reasonable fear of future harm, we review the decisions of both the BIA and the IJ as to these issues.  Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).  We review de novo claims of legal error, including Briones's argument that the BIA did not give reasoned consideration to his withholding of

---

[1]Briones does not challenge the BIA's ruling as to his asylum and CAT claims in his petition for review, and thus he has abandoned them in this Court as well.  See Cole v. U.S Att'y Gen., 712 F.3d 517, 530 (11th Cir. 2013) (explaining that an appellant's failure to adequately raise an issue in the opening brief will result in the claim being deemed abandoned).

removal claim.  Lin v. U.S. Att'y Gen., 881 F.3d 860, 871-72 (11th Cir. 2018).

We review the agency's factual determinations under the highly deferential

substantial evidence test.  Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1297 (11th

Cir. 2015).  Under this test, we must affirm the BIA's decision if it is "supported

by reasonable, substantial, and probative evidence on the record considered as a

whole."  Id.  We will reverse factual findings only when the record compels us to

do so, and "the mere fact that the record may support a contrary conclusion is not

enough to justify a reversal of the administrative findings."  Id.

### III.  WITHHOLDING OF REMOVAL

To qualify for withholding of removal under the INA, an applicant must

show that upon returning to his country his life or freedom would be threatened

because of his race, religion, nationality, membership in a particular social group,

or political opinion.  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  To satisfy

this burden of proof, the alien may establish past persecution based on a protected

ground.  Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1308 (11th Cir. 2013).

Establishing past persecution creates a rebuttable presumption that his life or

freedom would be threatened upon return to his country.  Id.  Alternatively, the

alien may establish that it is "more likely than not" that he would be persecuted

upon removal to his country based on a protected ground.  Id.  This "more likely

than not" standard is more stringent than the "well-founded fear of persecution"

4

required for asylum.  Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006).  A well-founded fear of future persecution must be subjectively genuine and objectively reasonable.  Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006).

Although the INA does not define persecution, this Court has said that persecution is an "extreme concept," and that "a few isolated incidents of verbal harassment or intimidation" and "[m]inor physical abuse and brief detentions do not amount to persecution."  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009) (concluding alien had not shown persecution where he was arrested for participating in a student demonstration, interrogated and beaten for five hours, detained for four days, and monitored after his release); see also Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (concluding alien had not shown persecution where he was threatened, detained at a police station for 36 hours, kicked and beaten with a belt, and suffered multiple scratches and bruises requiring two days of hospitalization); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289-91 (11th Cir. 2006) (concluding alien had not shown persecution where authorities detained him for five days, made him stand in the sun for two hours, and monitored him after release).  In determining whether the petitioner has suffered persecution, the harm suffered by the petitioner must be considered cumulatively.  Rodriguez, 735 F.3d at 1308; Shi v. U.S. Att'y Gen., 707 F.3d 1231,

1235 (11th Cir. 2013). However, harm done to others does not constitute persecution unless the harm is directed against the applicant personally. Rodriguez, 735 F.3d at 1308-09.

## IV. BRIONES'S CLAIMS

### A. Past Persecution

As an initial matter, Briones's argument that the IJ and the BIA failed to consider the evidence of harm cumulatively lacks merit. The BIA explicitly said it had considered the harm "cumulatively," and the IJ expressly based his conclusion on "the totality of the evidence." As to Briones's contention that both the IJ and the BIA failed to discuss all of his evidence of mistreatment, there is no requirement that they do so. See Jeune v. U.S. Att'y Gen., 810 F.3d 792, 803 (11th Cir. 2016). The record shows that both the BIA and the IJ gave reasoned consideration to his claims, arguments, and evidence, and announced their decisions in terms sufficient to enable us to perceive that the agency has "heard and thought and not merely reacted." See Jeune, 810 F.3d at 803; Lin, 881 F.3d at 874. That is all that is required.

Further, substantial evidence supports the agency's finding that Briones's cumulative mistreatment at the hands of the Sandinistas did not rise to the level of past persecution. First, the 1988 incident—in which a seven-year-old Briones witnessed a group of Sandinistas beat and threaten to kill his father because they

6

believed his father opposed Daniel Ortega and the Sandinista Party—does not constitute persecution because the harm was not directed at Briones personally. See Rodriguez, 735 F.3d at 1308-09.

Second, the record does not compel a finding that the later mistreatment directed at Briones because of his involvement with the Liberal Party—the threats to Briones's family, the loss of his university scholarship, and the four attacks by Sandinista members in 1998, 2001, 2003, and 2005—was sufficiently "extreme" to constitute persecution. Each attack resulted in only minor injuries that did not require prolonged medical treatment, such as bruises and swelling after the first attack, a dislocated ankle after the second attack, a cut finger that required stitches after the third attack, and stitches on his face and fractured upper front teeth after the fourth attack. Cf. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1003-05, 1008-09 (11th Cir. 2008) (concluding alien showed persecution where she received numerous death threats, was dragged by the hair out of her car and beaten, had her groundskeeper tortured and killed by attackers looking for her, and was kidnapped and beaten before being rescued by government forces); Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1214, 1217 (11th Cir. 2007) (concluding alien showed persecution where he suffered "numerous beatings, arrests, searches, and interrogations" and spent fifteen days in detention where he was "deprived of food, beaten, and threatened at gunpoint," resulting in a two-month hospitalization);

7

Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1255, 1257-58 (11th Cir. 2007) (concluding alien showed persecution where over an 18-month period, alien received numerous death threats and was assaulted with a rock, thrown out of a car, detained at gunpoint, smashed in the face with a rifle, and required surgery for a broken nose). Furthermore, the four incidents of violence were isolated incidents that occurred over a span of seven years, with no escalation of threats or harm. Accordingly, the record as a whole does not compel reversal of the agency's finding that Briones failed to establish past persecution.[2]

## B.    Future Persecution

Substantial evidence also supports the finding that Briones did not show an objectively reasonable fear of future persecution. See Silva, 448 F.3d at 1236. First, there is no indication that anyone in Nicaragua maintains an interest in harming Briones personally, especially considering he has been out of the country since 2005, and while in Nicaragua, Briones played only a relatively small role for the Liberal Party, collecting signatures, distributing pamphlets, and posting stickers for two days a week over a six month period during the 2005 presidential campaign. In addition, his parents, who also belong to the Liberal Party and were

---

[2]Because substantial evidence supports the IJ's and the BIA's finding that the harm Briones experienced did not rise to the level of persecution, we do not address the effect of Briones's failure to report the attacks to local authorities on his withholding of removal claim. Cf. Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1345 (11th Cir. 2007) (stating that the failure to report persecution to the local government authorities is generally fatal to an asylum claim unless the applicant can convincingly demonstrate that those authorities would have been unable or unwilling to protect the applicant).

"endlessly" threatened and harassed during the previous period of Sandinista political dominance, have remained unharmed in Villa Sandino even after the Sandinistas returned to power in 2006.  Finally, while the 2016 Human Rights Report for Nicaragua from the U.S. State Department indicates that the Sandinistas exercised substantial control over the government and received preferential treatment from police, it also suggested that the worst of the politically motivated abuses were focused on confrontations with armed opposition groups.  Thus, substantial evidence supports the finding that Briones did not show that it was "more likely than not" that he would be singled out for persecution upon removal to Nicaragua.

**PETITION DENIED.**