[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12374
Non-Argument Calendar
_____

Agency No. A096-275-213

YSANGEL YRENE CARRILLO RODRIGUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 9, 2021)

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Ysangel Yrene Carrillo Rodriguez, a native and citizen of Venezuela,

petitions this Court for review of the Board of Immigration Appeals' denial of her

untimely motion to reopen her removal proceedings, which concluded with a final order of removal in 2006. Rodriguez argues that the BIA failed to give reasoned consideration to the arguments and evidence that she presented in the motion to reopen and asks that we remand the motion back to the BIA for further consideration. Specifically, she argues that the BIA did not consider her evidence of an increase in political repression, extrajudicial killings perpetrated by armed groups called "colectivos," and anti-American sentiment in Venezuela. She contends that this evidence establishes changed circumstances sufficient to excuse her failure to timely file the motion to reopen under 8 U.S.C. § 1229a(c)(7)(C)(ii). We disagree and deny the petition.

## I.

Rodriguez entered the United States in 2001 as a nonimmigrant B-1 and was authorized to remain in the country for one month. She outstayed that authorization, however, and later applied for asylum in 2003 based on a fear of mistreatment, torture, and death based on her religious and political activity if returned to Venezuela. The Department of Homeland Security then ordered Rodriguez to appear before an immigration judge and charged her as removable under the Immigration and Nationality Act § 237(a)(1)(B), 8 U.S.C. § 1127(a)(1)(B). At her initial hearing, she conceded removability but sought political asylum and withholding of removal.

2

In her application for asylum, Rodriguez stated that she "fear[ed] mistreatment and harm if [she went] back to Venezuela from the Bolivarian Circles that persecuted [her], death threatened [her] due to [her] religious and civic activities." She attached numerous materials in support of her application, including an informational report from the United States Citizenship and Immigration Services website regarding the Bolivarian Circles. The report noted that the Bolivarian Circles took part in several protests and had allegedly contributed to violence against anti-Chávez demonstrators.

Rodriguez also attached the United States State Department's Country Reports for Venezuela from 2002 and 2003, which identified Venezuela as a constitutional democracy with free and fair multiparty elections. The 2002 report did, however, reference intimidation and death threats against political opposition, extrajudicial killings, and complaints of increasing government attacks on certain religious groups. The report also noted the harassment of certain civil society organizations by Bolivarian Circles and others identifying themselves as Chávez supporters. Neither report mentioned anti-American sentiment in Venezuela.

At the removal hearing, Rodriguez testified to experiencing numerous threatening acts while in Venezuela. After considering the evidence, the immigration judge denied her application and ordered her removed for failing to (1) file her asylum application within one year; (2) establish extraordinary circumstances

3

excusing that failure, and, alternatively; (3) establish that she was a victim of past persecution, has a well-founded fear of persecution, faced a clear probability of persecution, or that it was more likely than not that she would be tortured if returned to Venezuela. The BIA affirmed and entered its final order in 2006.

Rodriguez did not petition this Court for review of that decision and only filed the instant motion to reopen in 2019. In the instant motion, Rodriguez alleged that conditions in Venezuela have changed dramatically since her prior application for relief in 2003, citing the rise of an authoritarian executive and elections that were neither free nor fair in 2019. She also referenced several human rights abuses, extrajudicial killings perpetrated by the government-sponsored "colectivos," and the intimidation and imprisonment of political activists. She further noted that, in addition to her one child who was born before she initially applied for asylum, she is now the mother of two more United States citizens.

She alternatively moved for *sua sponte* reconsideration of her removal order, arguing that she had demonstrated an exceptional situation warranting reopening. She attached to the motion a sworn statement attesting to the danger that she faced in Venezuela, an application for asylum, and the State Department's 2018 Country Report on Human Rights Practices for Venezuela. That report stated that the 2019 presidential election was not free and fair and that political power had been concentrated in a single party and an increasingly authoritarian president for more

4

than a decade. It further reported extrajudicial killings by government forces, credible reports of torture and abuse of detainees by security forces, and numerous deaths of protestors attributable to the colectivos. She also attached a Human Rights Watch report describing the political state of affairs in Venezuela in far harsher terms than the State Department report. It referred to the colectivos as armed pro-government groups who acted alongside Venezuelan security forces to attack demonstrators in 2014 and 2017 and tied the groups to at least one alleged extrajudicial killing.

The government opposed Rodriguez's motion to reopen on the basis that it was untimely and that she had failed to demonstrate changed circumstances materially affecting her eligibility for asylum. The government argued that the two State Department Country Reports from 2005 and 2006 demonstrated that the circumstances in Venezuela that Rodriguez described had persisted since at least the time of those reports.

The BIA denied Rodriguez's motion to reopen. It determined that (1) the motion was untimely filed, (2) Rodriguez had not shown changed conditions, and (3) Rodriguez had not established *prima facie* eligibility or exceptional circumstances warranting the *sua sponte* reopening of her case. We now consider Rodriguez's timely petition for review of that order.

5

## II.

This Court lacks jurisdiction to review decisions of the BIA that are purely discretionary, which includes the decision not to reopen a case *sua sponte*. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 871 (11th Cir. 2018). Where the BIA's denial of a motion to reopen is based on nondiscretionary grounds, such as untimeliness or a failure to present new or previously unavailable evidence, however, this Court may review the basis for the denial even if the BIA also declined to reopen proceedings *sua sponte*. *See id.* at 871–72.

We review the denial of a motion to reopen a removal order for abuse of discretion. *See Contreras-Rodriguez v. U.S. Att'y Gen.*, 462 F.3d 1314, 1316 (11th Cir. 2006). The BIA's alleged failure to express reasoned consideration for its denial, however, is a legal error that we review *de novo*. *Lin*, 881 F.3d at 874.

## III.

An alien must file a motion to reopen removal proceedings no later than 90 days after the agency's final decision. *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). That timeliness requirement does not apply, however, if the motion is based on evidence of changed circumstances in the applicant's country that could not have been presented at the previous hearing. *Id.* Motions to reopen are disfavored, especially in removal proceedings, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain

6

in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Accordingly, the moving party bears a heavy burden to show that, if proceedings were reopened, new evidence would likely change the result. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256–57 (11th Cir. 2009).

The BIA is not required to discuss every piece of evidence in its decision, but it must give reasoned consideration to the motion and make adequate findings upon which its decision is based. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006). To meet this burden, the BIA must only "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* The BIA may show reasoned consideration by listing the basic facts of the case, referring to relevant statutory and regulatory authority, and accepting several grounds on which the immigration judge denied the petitioner's motion to reopen. *Lin*, 881 F.3d at 874–75. The BIA fails to give reasoned consideration to a claim, however, when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 874.

Here, the BIA gave reasoned consideration to Rodriguez's motion to reopen her removal proceedings. In its order denying the motion, the BIA listed the basic facts of the case, referred to the relevant statutory and regulatory authority requiring

7

a showing of "changed country conditions," and explained Rodriguez's failure to compare the country conditions in Venezuela at the time of her initial application with the current country conditions. Instead, the BIA noted, she attached documents showing conditions similar to those that were referenced in the 2005 and 2006 country condition reports presented by the government. It is clear from the BIA's discussion of the evidence before it that it "heard and thought" about Rodriguez's case. Therefore, it gave reasoned consideration to her motion. Accordingly, we deny the petition for review.

**PETITION DENIED.**