[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12089
Non-Argument Calendar

_____

Agency No. A206-630-974

LETICIA HERNANDEZ-TROCHEZ,
EDIMILSON JOSE LINARES-HERNANDEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 23, 2021)

Before WILSON, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Leticia Hernandez-Trochez and her son, Edimilson Jose Linares-Hernandez,

petition for review of the Board of Immigration Appeals's ("BIA") order affirming

the immigration judge's order of removal and denial of their applications for asylum and withholding of removal.  For the reasons discussed below, we lack jurisdiction and dismiss the petition.

## I.    FACTUAL AND PROCEDURAL HISTORY

Hernandez-Trochez and her son were born in and are citizens of Honduras. On March 24, 2014, Hernandez-Trochez and her son entered the United States through Texas without legal authorization.  The Department of Homeland Security served them with notices to appear, charging them as subject to removal because they were present in the United States without being admitted or paroled by an immigration officer.  On August 11, 2014, at a removal hearing, Hernandez-Trochez's attorney conceded removability and expressed an intent to apply for asylum.

On October 10, 2014, Hernandez-Trochez applied for asylum and withholding of removal under both the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT").  The application said that she was a member of a particular social group and she feared returning to Honduras because her son's father, Jose Salomon Linares, subjected her to physical, mental, and sexual abuse.[1]

---

[1] Under the INA, an alien is eligible for asylum if the alien was persecuted on account of membership in a particular social group.  8 U.S.C. § 1158(b)(1)(A); *id*. § 1101(a)(42).

2

To support her claim, Hernandez-Trochez submitted two affidavits that were identical except for the name of the affiant. She also included a third statement from a Honduran municipal government employee that concluded that Linares subjected Hernandez-Trochez to domestic violence. Additionally, she submitted reports from the United States Department of State, Immigration and Refugee Board of Canada, and a think tank called the Americas Program, all of which detailed the extent of the violence against women in Honduras.

On February 4, 2015, an immigration judge held a merits hearing in this case. At the hearing, Hernandez-Trochez testified that Hernandez-Trochez and Linares were neighbors who met shortly after her family moved away. The two became friends and Linares helped her financially. Eventually, he began to abuse her, including sexually. Hernandez-Trochez gave birth to Linares's son, but the abuse continued. Linares threatened to take away her son if she left. She went to the police three times, but the police refused to do anything about the situation. Eventually, she left their home and went to stay with her sister, who lived about four hours away. Linares was eventually able to find Hernandez-Trochez and caused a disturbance at her sister's house where she was staying. She filed a complaint with the police, and Linares did not come back to her sister's house. He did, however, tell her that he was still watching her and might abduct their son after school. She further testified that there was no place in Honduras where she and her son would be safe.

3

On cross-examination, Hernandez-Trochez said that the police took her complaint and investigated after Linares showed up at her sister's house. The police searched for Linares but did not find him. As to the identical affidavits Hernandez-Trochez submitted to support her asylum application, she testified that neighbors, whom she had not spoken with since she arrived in the United States, were the authors. She said that the affiants wrote the statements in Honduras and that she brought them with her to the United States.

Hernandez-Trochez's testimony about the origin of the letters was inconsistent. For example, she said that she obtained the letters while in Honduras. When asked why the letters had an Orlando, Florida, mailing address, she said that she did not bring them from Honduras. She also did not fully explain why two of the letters were virtually identical. As to the third letter, she said it was from her sister's neighbor, only to later admit that it was written by an official with a government agency in Honduras called the Office of Women and Children. When asked about this discrepancy, she said that she thought that the immigration judge was referring to a different statement.

At the conclusion of the hearing, the immigration judge orally issued his initial decision, which denied the application. The immigration judge found that Hernandez-Trochez's testimony concerning the affidavits was not credible. He also found that Hernandez-Trochez had not shown past persecution, a reasonable

4

probability of future persecution, or a well-founded fear of future persecution on account of membership in a particular social group if she returned to Honduras. Third, the immigration judge concluded that Hernandez-Trochez did not show that Honduran police were unwilling or unable to protect her.

Hernandez-Trochez appealed to the BIA.  On November 6, 2015, the BIA remanded to the immigration judge after concluding that it was clearly erroneous to find Hernandez-Trochez testimony not credible merely because of the discrepancies concerning the affidavits.  It further concluded that the immigration judge should have addressed the merits of Hernandez-Trochez's proposed social group—"Hondurans who are in a committed relationship and unable to leave"—and that, on remand, should hear additional testimony as to whether the Honduran police could or would protect her.

On June 19, 2017, after the case had been remanded, the immigration judge held another merits hearing.  As to the BIA's credibility ruling, the immigration judge thought the BIA "got it wrong and that must be because [he] didn't articulate it well."  The immigration judge thus called for additional testimony from Hernandez-Trochez to help discern her credibility.  Hernandez-Trochez's counsel argued that the BIA had already determined the credibility issue.  The government disagreed.  Hernandez-Trochez testified again as follows.  On one occasion, she went to a police station and left after waiting for three hours for someone to take her

complaint. When she tried to file a complaint at the same police station months later, she waited five hours and left because no one had taken her complaint. Six months later, she moved to her sister's house, and Linares went looking for her. Two days later, she went to a police station near her sister's home and filed a complaint. An injunction prohibiting Linares from contacting Hernandez-Trochez was issued, and police patrolled near her sister's house about once per week in case Linares showed up.

Nonetheless, Linares—either directly or through friends—stalked her and her son for seven months after the injunction. Linares occasionally went back to the sister's house. On one occasion, he threw things around the sister's house, and on another occasion, he tried to take her and her son by force. Police responded on both occasions, but Linares was gone by the time they arrived. Two days after the attempted kidnapping, Hernandez-Trochez went to the police station again. She thought they were not paying attention to her. A week later, she decided to flee to the United States.

Cross-examination revealed an inconsistency in her testimony. Specifically, she previously testified that she did not have any contact with Linares after the injunction was issued but later admitted that he visited her at her sister's house. She also testified that she did not have a copy of the injunction and that she did not submit copies of the police complaints.

The immigration judge again denied Hernandez-Trochez's application for asylum, withholding of removal, and CAT relief. He once again found that her testimony was not credible. He cited inconsistent statements about how often police were called, a lack of documentary support for her claims, and the discrepancies surrounding the affidavits she submitted. He found that, given the injunction that she obtained, the police attempts to arrest Linares, and the police patrols around her son's school, the Honduran police were willing and able to protect her. More broadly, he noted that the Honduran government was working to combat domestic violence. The immigration judge then denied her requests for asylum and withholding of removal and ordered that Hernandez-Trochez be removed to Honduras.

Hernandez-Trochez appealed to the BIA. As to the inconsistent statements, she said that the passage of time helped clarify the traumatic experience. Additionally, she argued that the BIA had already determined she was credible. As to whether the Honduran police were willing and able to protect her, she noted that it took three visits to the police station and an injunction for the police to take any action. Even then, she contends that the patrols to protect her were limited and that Linares had additional contact with her even after the injunction was issued. She also noted that, "due to recent BIA decisions, respondent's definition of her [particular social group] might not be eligible to establish nexus to an enumerated

7

ground." She also stated that if the BIA "evaluates that respondent's definition of PSG lacks the required criteria to be accepted as an enumerated ground, she respectfully submits that this case be remanded to give [her] the opportunity to define her PSG according to decisions released after" her case was submitted.

On May 12, 2020, the BIA dismissed the appeal. The BIA concluded that the immigration judge did not clearly err in his credibility finding because he cited specific, cogent reasons for the credibility finding. Additionally, the BIA noted that its previous ruling did not determine whether Hernandez-Trochez was credible, only that the immigration judge's process for determining credibility at the first merits hearing was flawed. The BIA also agreed with the immigration judge's alternative finding that police in Honduras were willing and able to help protect her from Linares. The decision noted that police made attempts to arrest Linares and enjoined him from approaching her. The BIA further determined that Hernandez-Trochez waived the issue of CAT relief because she did not meaningfully raise it before the BIA. Because the BIA's conclusions concerning failure to establish past persecution or a well-founded fear of future persecution and the willingness of the Honduran police to protect her were dispositive, it did not address other issues. This timely petition for review followed.

## II.    STANDARDS OF REVIEW

This Court's subject matter jurisdiction is a legal issue that we review *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). When we have subject-matter jurisdiction in a case, we review both the BIA's decision and those portions of the immigration judge's decision expressly adopted by the BIA. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).

The BIA and immigration judge must give "reasoned consideration" to a petition for relief from removal. *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir. 2013) (quoting 8 C.F.R. § 208.16(c)(3)). This standard is met so long as the BIA does not (1) misstate the contents of the record, (2) fail to adequately explain why it rejected logical conclusions, or (3) provide unreasonable justifications for its decisions that do not respond to any arguments in the record. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333–34 (11th Cir. 2019). The BIA cannot fail to give reasoned consideration to an issue that was never before it. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1303 (11th Cir. 2015)

We review the BIA's legal conclusions *de novo* and factual findings for substantial evidence. *Ali.*, 931 F.3d at 1333. The Court will not vacate for lack of substantial evidence unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C § 1252(b)(4)(B).

## III.  ANALYSIS

In her petition for review, Hernandez-Trochez challenges two aspects of the BIA's decision.[2]  First, she contends that the BIA erred in not remanding the matter so that she could restate her proposed particular social group in light of a decision by the Attorney General.  Second, she argues that the BIA decision on review denied her due process by affirming the immigration judge's credibility determination, which she says contradicts a prior BIA decision.  For the reasons explained below, we lack jurisdiction to decide either of these claims.

Courts lack jurisdiction to review final orders of removal unless the petitioner has exhausted all administrative remedies available as of right.  8 U.S.C. § 1252(d)(1).  To exhaust a claim before the BIA, the petitioner must do more than make "passing references" or "[u]nadored, conclusory statements" in her brief to the BIA.  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016) (quoting *Indrawati*, 779 F.3d at 1297).  "Simply put, petitioners must have previously argued the 'core issue now on appeal' before the BIA."  *Indrawati*, 779 F.3d at 1297 (quoting *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008)).  The exhaustion requirement is jurisdictional and precludes review of a claim that was not presented to the BIA.  *Amaya*, 463 F.3d at 1249-50 (holding that we

---

[2] In the petition for review, Hernandez-Trochez does not raise or challenge the denial of her relief under CAT, the merits of her credibility determination, or the agency's determination that the Honduran government is unwilling or unable to protect her.  Because Hernandez-Trochez did not raise those issues in her opening brief, she has abandoned them.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).

lack jurisdiction to review a claim not presented to the BIA even if the BIA reached it *sua sponte*).

In her petition for review, Hernandez-Trochez contends that the BIA should have remanded this matter to the immigration judge given the Attorney General's decision in *Matter of A-B-*, 27 I&N Dec. 316 (B.I.A. June 11, 2018).  Her brief to the BIA, however, does not specifically mention this decision.  Instead, it mentions "recent BIA decisions" that might be the basis for a remand for her to define her particular social group.  Even if we construe Hernandez-Trochez's reference to "recent BIA decisions" as referring to the Attorney General's decision in *Matter of A-B-*, as her brief to this Court suggests, it is a mere passing reference that did not give the BIA an opportunity to "consider the niceties and contours of the relevant arguments" and thus does not satisfy the exhaustion requirement.  *Amaya-Artunduaga*, 463 F.3d at 1250.  As a result, we lack jurisdiction to consider this issue.

Hernandez-Trochez's due process claim suffers the same defect.  In her petition, Hernandez-Trochez contends that the immigration judge deprived her and her son of due process because, at the second hearing, the immigration judge was determined to reach the same credibility finding as he did at the initial hearing.  Her brief to the BIA challenged the substance of the credibility finding, but it did not raise a due process claim regarding the immigration judge abandoning his role as a

11

neutral factfinder. "Where a procedural due process claim properly falls within the immigration courts' power to review and provide a remedy, the claim must be exhausted before it can be considered by this Court." *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 868 (11th Cir. 2018).

A petitioner's "due process claim, regarding the fairness of the Immigration Judge as a neutral factfinder [is] 'precisely the kind of procedural error which requires exhaustion.'" *Id.* (quoting *Amaya-Artunduaga*, 463 F.3d at 1251). Because Hernandez-Trochez did not exhaust her administrative remedies with respect to the due process claim, we lack jurisdiction to consider it for the first time here.

## IV.    CONCLUSION

For the foregoing reasons, we dismiss the petition for review.

**PETITION DISMISSED.**

12