[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14186
Non-Argument Calendar

_____

Agency No. A079-497-894

PETRONA TOMAS,

                                                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 1, 2021)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

In 2006, Petrona Tomas, a native and citizen of Guatemala, was ordered removed *in absentia* after she failed to appear for her removal hearing.  More than thirteen years later, she filed a motion to reopen her removal proceedings and rescind her removal order, based on lack of notice.  An immigration judge ("IJ") denied her motion, and the Board of Immigration Appeals ("BIA") affirmed.  Tomas now petitions this Court for review.  After careful review, we agree with Tomas that the agency failed to follow its own precedents without providing a reasoned explanation for doing so.  We therefore grant the petition for review.

## I.

Tomas is a native and citizen of Guatemala who entered the United States at an unknown place and time without being admitted or paroled.  In September 2001, before the initiation of removal proceedings, she applied for asylum and withholding of removal, explaining that she left Guatemala because of severe poverty and high unemployment and crime.  She later failed to appear for her scheduled interview with an asylum officer.

On April 25, 2005, the government issued Tomas a notice to appear, charging her as removable under 8 U.S.C. § 1182(a)(6)(A)(i) and directing her to appear for a removal hearing on April 19, 2006.  The notice to appear was sent by regular mail to Tomas at a post office box in Albany, Georgia, which was the last address she provided the government in connection with her asylum application.  Tomas did not

appear for the removal hearing in April 2006, so the IJ entered an *in absentia* removal order. The removal order was mailed to the same post office box.

In December 2019, Tomas filed a counseled motion to reopen her removal proceedings and rescind the *in absentia* removal order for lack of proper notice.[1] Tomas admitted that the post office box, which belonged to her brother, was her "current address" at the time the notice to appear was sent, but she argued that she lacked proper notice and that she had overcome the presumption of delivery that applied to the notice to appear based on the factors set out in *Matter of M-R-A-*, 24 I. & N. Dec. 665 (BIA 2008), and applied in *Matter of C-R-C-*, 24 I. & N. Dec. 677 (BIA 2008).

In support of her motion, Tomas submitted a personal affidavit stating that she first learned of the removal proceeding in 2013 while consulting with an immigration attorney on another matter, though she was unable to afford pursuing relief at that time. She also submitted an affidavit from her brother, who collected the mail from the post office box for Tomas and several others but did not recall seeing any official documents for Tomas. Her brother further stated that, after Tomas "moved to another address," he continued to receive her mail but "did not receive any notice or any official documents." Tomas also pointed to the lack of evidence showing that

---

[1] Tomas's motion also asserted that the removal order "was entered without statutory authority" and that she presented "exceptional circumstances warranting *sua sponte* reopening." She has expressly abandoned those grounds on appeal.

the documents were "actually mailed," such as an envelope or cover letter. Finally, Tomas noted that she had an incentive to appear for the removal hearing, given her prior application for asylum and withholding of removal. The government opposed reopening.

In January 2020, an IJ denied Tomas's motion to reopen. The IJ explained that a presumption of delivery applies when a properly addressed notice is sent by regular mail through normal procedures, and it summarized *Matter of M-R-A-*'s list of factors for rebutting that presumption. After reviewing Tomas's evidence, the IJ found that she had failed to rebut the presumption because the notice to appear was properly sent to her last known address and there was "no evidence in the record that any correspondence sent to this address was returned as undeliverable." So, according to the IJ, Tomas "or someone at the address provided" received the notice to appear, which was sufficient to establish "proper notice" even if Tomas never saw the notice to appear. In support of that conclusion, the IJ quoted the BIA's statement in *Matter of G-Y-R-*, 23 I. &. N. Dec. 181, 189 (BIA 2001), that a person can "be properly charged with receiving notice, even though he or she did not personally see the mailed document."

Tomas appealed to the BIA, contending that the IJ failed to follow *Matter of M-R-A-* and *Matter of C-R-C-*, that there was no evidence that the notice to appear had in fact been mailed to the post office box, and that she met her burden of

4

overcoming the presumption of delivery. Tomas further argued that, even if the notice to appear had been received by her brother, it was not reasonable to charge her with notice because the failure to receive notice was through no fault of her own. On that latter point, she said that *Matter of G-Y-R-* was inapposite and that the BIA should instead look to the reasoning of *Matter of M-D-*, 23 I. & N. Dec. 540, 547 (BIA 2002), which stated that a noncitizen can be charged with notice where he "neglect[s] or refus[es] to collect his mail."

The BIA affirmed the denial of the motion to reopen "[f]or the reasons articulated" by the IJ. The BIA did not otherwise address Tomas's arguments that the IJ's reasoning was inconsistent with *Matter of M-R-A-* and *Matter of C-R-C-* or that *Matter of G-Y-R-* did not apply. Tomas timely petitions this Court for review, raising essentially the same arguments that she presented to the BIA.

## II.

Where, as here, the BIA expressly adopts the IJ's decision, we review both decisions. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review the denial of a motion to reopen for an abuse of discretion. *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1340 (11th Cir. 2003). The BIA can abuse its discretion by misapplying the law or "by not following its own precedents without providing a reasoned explanation for doing so." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013); *Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1226 (11th Cir.

5

2008) ("[T]he BIA's failure to follow its own precedents without providing a reasoned explanation for doing so can constitute an abuse of discretion.")

A noncitizen who fails to attend her removal proceeding is subject to removal *in absentia* so long as she is removable and was provided with written notice of the proceeding. 8 U.S.C. § 1229a(b)(5)(A). The noncitizen may seek rescission of the *in absentia* removal order by filing a motion to reopen "at any time" and demonstrating that she "did not receive notice" through either a notice to appear or a subsequent notice of hearing. *Id.* § 1229a(b)(5)(C)(ii).

When a noncitizen moves to reopen her removal proceedings based on "a claim that notice sent by regular mail was not received, the question to be determined is whether the respondent has presented sufficient evidence to overcome the presumption of delivery attached to notices sent by regular mail, which is weaker than the presumption applied to delivery by certified mail." *Matter of C-R-C-*, 24 I. & N. Dec. at 679. "[A]ll relevant evidence *must be considered* in making the determination." *Id.* (emphasis added). Relevant evidence includes (a) affidavits from the noncitizen and other parties with knowledge of whether the notice was received; (b) evidence "that the respondent had an incentive to appear," such as a prior affirmative application for relief; (c) the noncitizen's diligence or lack thereof upon learning of the *in absentia* removal order; and (d) "any other circumstances or evidence indicating possible nonreceipt of notice." *Matter of M-R-A-*, 24 I. & N.

6

Dec. at 674.  None of these factors are either necessary or sufficient; rather, "[e]ach case must be evaluated based on its own particular circumstances and evidence." *Id.*

Importantly, however, the BIA has held that a noncitizen "can, in certain circumstances, be properly charged with receiving notice, even though he or she did not personally see the mailed document." *Matter of M-D-*, 23 I. & N. Dec. at 545 (citing *Matter of G-Y-R*, 23 I. & N. Dec. at 189).  For example, if the notice to appear "reaches the correct address but does not reach the alien through some failure in the internal workings of the household, the alien can be charged with receiving proper notice, and proper notice will have been effected." *Id.*

Insofar as Tomas claims that the notice to appear, though properly delivered to the post office box, her current address at the time, may have been taken inadvertently by another person who used that same address or simply not given to her by her brother, that would not defeat proper notice under BIA precedent.[2]  *See id.*  Resisting this conclusion, Tomas claims that the IJ and BIA should have applied *Matter of M-D-*, which concerned a motion to reopen, instead of *Matter of G-Y-R*, which did not.  But *Matter of M-D-* is not "directly on point," as she claims, nor did

---

[2] To be sure, if Tomas had begun receiving mail at another address but failed to notify the government of her change of address, it appears that she could not be charged with receiving notice under BIA precedent.  *See Matter of Anyelo*, 25 I. & N. Dec. 337, 339 (BIA 2010) (holding a noncitizen could not be charged with receiving notice where the notice to appear was sent to his last known address and he failed to update the government with his current mailing address).  Although Tomas's brother's affidavit indicates that Tomas began receiving mail at another address at some point, Tomas conceded in her motion to reopen and rescind that the post office box was her "current address" at the time the notice to appear was sent.

it hold that a noncitizen can be charged with notice only where she was at fault for the failure to receive notice.

Matter of M-D- addressed a situation where notice by certified mail sent to the correct address was returned unclaimed. *Id.* at 547. Although no delivery occurred, the BIA held that the noncitizen could be charged with notice because "[i]t is not reasonable to allow the respondent to defeat service by neglecting or refusing to collect his mail." *Id.* The BIA characterized this situation as covered by *Matter of G-Y-R-*, reiterating that "if the Notice to Appear reaches the correct address but does not reach the alien through some failure in the internal workings of the household, the alien can be charged with receiving proper notice." *Id.* (quotation marks omitted). Thus, *Matter of M-D-* clearly establishes that *Matter of G-Y-R-* applies in the context of motions to reopen, so it was no abuse of discretion to apply it to her motion to reopen.[3] And the possibility that her brother simply failed to give her the notice to appear—a "failure in the internal workings of a household"—is not enough to warrant reopening. *See id.*

---

[3] In the alternative, Tomas maintains that the IJ and BIA misinterpreted 8 U.S.C. § 1229a(b)(5)(C)(ii) by concluding that she could be charged with notice if the notice to appear was received by her brother. She did not raise this statutory-interpretation argument to the IJ or the BIA, however. Where the BIA has the power to review a claim and provide a remedy, exhaustion of that claim is required before we can consider it. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 868 (11th Cir. 2018). Not only does the BIA have the power to revisit its interpretations, it "must consider varying interpretations and the wisdom of its policy on a continuing basis." *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005). In other words, because the BIA could remedy Tomas's claim, she was required to exhaust it there. *See Bing Quan Lin*, 881 F.3d at 868. Because she did not, we cannot consider it.

Instead, Tomas bears the burden of rebutting the presumption that the notice to appear was delivered to the post office box. *See Matter of M-R-A-*, 24 I. & N. Dec. at 674. To meet that burden, Tomas provided a sworn affidavit stating that she did not receive the notice to appear informing her of the date of her removal hearing. That statement was corroborated by an affidavit from her brother, who stated that he either did not receive or did not recall receiving any official documents for Tomas at the post office box. And there is no indication that any subsequent notice or document was sent to the post office box before the removal order. Also, Tomas had submitted a prior affirmative action for relief, which suggests she "had an incentive to appear." *Id.*

Although the IJ cited the factors from *Matter of M-R-A-*, the IJ concluded that Tomas had not overcome the presumption solely because there was "no evidence in the record that any correspondence sent to this address was returned as undeliverable," so the IJ was "left to conclude that [Tomas], or someone at the address provided, was in receipt of the [notice to appear]." The BIA likewise adopted that conclusion. But in both *Matter of C-R-C-* and *Matter of M-R-A-*, the BIA concluded that the presumption had been rebutted despite there being no indication that any mail was returned undelivered. *See Matter of C-R-C-*, 24 I. & N. Dec. at 679–80; *Matter of M-R-A-*, 24 I. & N. Dec. at 675–76. That is not surprising,

since mail is sometimes lost or misdelivered, so the conclusion that the notice was received does not necessarily follow the fact that the notice was not returned.

While we agree with the government that "if the mail was not returned, it supports the presumption of delivery," that fact alone does not relieve the agency of its obligation to consider "all relevant evidence." *Matter of C-R-C-*, 24 I. & N. Dec. at 679. And here, the IJ and BIA did not explain why Tomas's evidence, which addressed several of the *Matter of M-R-A-* factors, was not sufficient to overcome the "weaker" presumption of delivery applicable to notices sent by regular mail. Neither the IJ nor the BIA discounted the affidavits from Tomas or her brother, nor did they discuss or weigh Tomas's prior affirmative application for relief. By basing the denial of Tomas's motion to reopen solely on one non-dispositive factor, the IJ and BIA, without any reasoned explanation, failed to apply BIA precedent requiring consideration of "all relevant evidence" of the "particular circumstances."[4] *Matter of C-R-C-*, 24 I. & N. Dec. at 679; *Matter of M-R-A-*, 24 I. & N. Dec. at 674.

Accordingly, the agency abused its discretion in denying Tomas's motion to reopen. *See Ferreira*, 714 F.3d at 1244 (holding that the BIA abused its discretion by "limiting its analysis" to one factor and failing to "articulate or weigh" all relevant

---

[4] The government supplies additional reasoning for the denial of the motion to reopen, such as Tomas's alleged lack of diligence, but we are limited to the explanation given by the agency. Neither the IJ nor BIA found that any lack of diligence undermined her claim that she lacked notice of the notice to appear, and "[w]e may not supply a reasoned basis for the agency's action that the agency itself has not given." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 833 F.3d 1274, 1285 (11th Cir. 2016) (quotation marks omitted).

10

factors "as required by the BIA's own precedent"). We therefore grant Tomas's petition for review, vacate the denial of her motion to reopen, and remand for further proceedings consistent with this opinion.

**PETITION GRANTED; VACATED AND REMANDED.**