[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11060

Non-Argument Calendar

_____

MIRTHA MARCHENA CHAVEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-753-336

_____

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Mirtha Marchena Chavez ("Marchena") petitions for review of an order by the Board of Immigration Appeals ("BIA"), affirming the decision of an immigration judge ("IJ"), which (a) denied a continuance after venue for the final removal hearing was changed from New Jersey to Georgia without her input, (b) ruled her ineligible for asylum and withholding of removal due to a prior conviction for a "particularly serious crime," and (c) denied relief under the United Nations Convention Against Torture ("CAT"). Marchena argues that the change in venue violated her due-process rights, that the agency erred by skipping a step when analyzing whether her conviction for conspiracy to commit aggravated assault constituted a "particularly serious crime," and that the agency made legal and factual errors when evaluating her claim for CAT relief. After careful review, we deny the petition in part and dismiss it in part.

I.

Marchena, a native and citizen of Peru, entered the United States in 1996. She moved to New Jersey, where she married and raised three children. She also was arrested for and convicted of several criminal offenses. As relevant here, in 2012, she was charged with attempted murder and conspiracy to commit murder, arising from an alleged plot to murder her husband, and she

later pled guilty to the reduced charge of conspiracy to commit aggravated assault. For that offense, she was sentenced to three years in prison and three years of probation.

## A.

In August 2015, Marchena was served with a notice to appear by the Department of Homeland Security ("DHS"). DHS alleged that she was removable for being present without authorization and because her conviction for conspiracy to commit aggravated assault was a crime involving moral turpitude. Through counsel, Marchena admitted the factual allegations and conceded the charged grounds for removal.

In June 2016, Marchena filed an application for asylum, withholding of removal, and protection under CAT. She updated her application several times, with a final version submitted in August 2020. She indicated that she fled Peru after being beaten, raped, and left for dead by members of the Communist Party of Peru, or "Shining Path," which she said was a large gang that had corrupted the country. And she decried a culture of violence against women in Peru, which included killings, disappearances, and sex trafficking. In a brief submitted with the final application, Marchena also described the physical and emotional abuse her husband inflicted on her, which led to her run-ins with the law.

It appears that, after her 2015 sentencing, Marchena went through periods of custody by state and immigration authorities. The precise details are not important here. What matters is that

her immigration case was delayed repeatedly, and the IJ did not resolve her applications for relief until 2020, once she was released from state custody after serving a probation-revocation sentence. For most of that time, she was represented in the immigration case by the attorney who appeared at the final removal hearing.

Upon her release from state custody in June 2020, Marchena was transferred to federal immigration custody and moved to the Irwin County Detention Center in Ocilla, Georgia. Because of that transfer, DHS filed a motion to change venue to the Atlanta Immigration Court on June 24, 2020. An immigration judge granted the motion five days later, on June 29, 2020. Marchena's attorney, who was based in New Jersey, was permitted to appear by telephone for the final removal hearing in September 2020 in Atlanta.

## B.

At the removal hearing, Marchena's attorney objected to the order granting a change in venue, arguing that it prejudiced his ability to prepare Marchena for the hearing, and he requested a continuance of three weeks. The IJ denied a continuance for two reasons: (1) any objection to the change in venue would have been "meritless" because Marchena had been transferred to the Irwin County Detention Center in Georgia; and (2) the attorney's firm had represented Marchena for nearly five years by the time of the hearing.

The hearing went forward, and Marchena testified that a group of men affiliated with the Shining Path grabbed her after

work at gunpoint, "beat [her] up so hard that they broke [her] face," and raped her repeatedly. They also hit her head against the concrete and told her that if she informed her family about what happened they would kill her and her family. After these events, her father decided that she needed to flee the country, and he helped her do so. She believed that the men who attacked her wanted to traffic her as a sex slave, and that if she returned to Peru, she would be forced into sex trafficking or killed. Marchena also testified that her brother was kidnapped by members of the Shining Path.

Regarding her conviction for conspiracy to commit aggravated assault, Marchena testified that she had told a "guy who went to [her] work," who ultimately notified the police, to "hit" her (now ex-) husband "so that he can feel what I was feeling." She explained that her ex-husband was physically and emotionally abusive and had forced her into prostitution. She denied attempting to hire a hitman to kill her husband.

DHS opposed granting relief from removal, arguing that Marchena was barred from asylum or withholding because her conspiracy conviction qualified as a "particularly serious crime." It asserted that her testimony about the offense was not credible and that the IJ could look to newspaper articles about the crime, which it had filed with the court, for context. It also argued that she failed to establish a nexus to a protected ground. In response, Marchena's counsel did not suggest that the articles were inaccurate or unreliable, but rather emphasized the severe and abusive circumstances which "drove her to . . . take such drastic steps."

## C.

The IJ rendered an oral decision denying relief. As relevant here, the IJ determined that Marchena was ineligible for asylum and withholding because her conviction for conspiracy to commit aggravated assault was a "particularly serious crime."[1] In that section of the decision, the IJ first concluded that her conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) and (U) as a conspiracy to commit a crime of violence. The IJ then went on to analyze "the circumstances and the underlying facts of the conviction." The IJ cited newspaper articles submitted by DHS indicating that Marchena had "attempted to hire an undercover officer to kill her husband," paying a deposit and giving specific instructions. The IJ also noted that Marchena pled guilty to "conspiracy to commit aggravated assault by soliciting another to cause serious bodily injury" and was sentenced to three years in prison. "Notwithstanding her plea to the lesser included charge," the IJ stated, her conviction qualified as a "particularly serious crime." As a result, according to the IJ, Marchena was eligible for CAT relief only.

---

[1] In addition, the IJ found that Marchena's asylum application was untimely and that her claims for asylum and withholding failed on the merits. The BIA agreed with the timeliness finding and did not address the IJ's merits ruling. Marchena has abandoned any challenge to the timeliness determination, which alone warrants denial of her asylum claim, and we will not consider the merits because those issues were not addressed by the BIA. See Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016).

21-11060                Opinion of the Court                7

But the IJ also denied Marchena's request for CAT relief, finding that it was not "more likely than not that she would be tortured by the Peruvian government or that she would subjected to torture with the acquiescence of the Peruvian government." The IJ noted that the Peruvian government had made efforts to combat the terrorist groups, "although they may be imperfect," which indicated that it would not acquiesce to the harm Marchena feared.

## D.

Marchena appealed to the BIA, presenting three main arguments. First, she contended that the IJ erred in deciding that her conviction for conspiracy to commit aggravated assault constituted a "particularly serious crime" that barred both asylum and withholding. Although she asserted that the IJ "misappl[ied] the legal standard of what amounts to a conviction for a 'particularly serious crime,'" her argument was primarily factual in nature. She claimed that the IJ failed to "giv[e] enough weight" to her mitigating evidence and should have accounted for "the longstanding history of abuse against [her] by her partner" and her desire to protect herself and her children.

Second, Marchena argued that, contrary to the findings of the IJ, the evidence showed that she had experienced torture in Peru and that the government acquiesced in such torture by "turn[ing] a blind eye to the crimes committed by the group." She said that many Shining Path terrorists had been pardoned and reintroduced into society and still posed a threat to her and other women.

Finally, Marchena maintained that the change in venue, which was granted without affording her an opportunity to object, prejudiced her case. She asserted that she did not retain current counsel until 2017 and that she did not have sufficient contact with counsel to prepare for the hearing.

## E.

The BIA affirmed the IJ's decision. In relevant part, the BIA agreed with the IJ that Marchena was ineligible for asylum and withholding because she had been convicted of a "particularly serious crime." Citing the New Jersey statutes of conviction, the BIA first affirmed the IJ's determination that the conviction for conspiracy to commit aggravated assault qualified as an aggravated felony crime of violence under 8 U.S.C. § 1101(a)(43)(F), which rendered her ineligible for asylum under 8 U.S.C. § 1158(b)(2)(A) and (B). As for withholding, the BIA found that the IJ "properly considered the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." And in the BIA's view, the IJ's assessment of the underlying circumstances was not clearly erroneous.

Next, the BIA affirmed the denial of CAT protection. In the BIA's view, the IJ "did not clearly err in her prediction as to what would likely happen to [Marchena] upon return to Peru and the degree of government involvement." It also stated that, given the IJ's factual findings, Marchena did not establish that she would be subjected to treatment that rises to the level of "torture" as defined in governing regulations and BIA precedent.

21-11060                Opinion of the Court                9

Finally, the BIA upheld the IJ's decision not to grant a continuance because of the change in venue. The BIA found that DHS established good cause for the change in venue and that, given the lengthy history of the case and counsel's longstanding representation of Marchena, a further continuance was not warranted. It further concluded that Marchena was not prejudiced because she was represented by counsel at the hearing and had a reasonable opportunity to present testimony, documents, and arguments in support of her applications for relief. Marchena now petitions this Court for review.

## II.

We review the decision of the BIA only, except to the extent that the BIA expressly adopts or agrees with the IJ's opinion or reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). "We therefore review the IJ's opinion, to the extent that the BIA found that the IJ's reasons were supported by the record, and we review the BIA's decision, with regard to those matters on which it rendered its own opinion and reasoning." *Id.* (quotation marks omitted).

We review the agency's factual findings for substantial evidence and its conclusions of law on constitutional or statutory matters *de novo*. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009); *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006). Review for substantial evidence is deferential and is based on a construction of the record evidence that is most favorable to the agency's decision. *Kazemzadeh*, 577 F.3d at 1350. Findings of

fact may be reversed only if the record compels a different result. *Id.* at 1351.

But "[a] petitioner contesting a final order of removal must exhaust the administrative immigration process before [s]he may be heard in federal court." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 866 (11th Cir. 2018). A failure to raise an issue before the BIA amounts to a failure to exhaust, which deprives us of jurisdiction to review the issue on appeal. *Id.* at 867. To properly raise an issue, the petitioner must do more than make a "passing reference to the issue" and instead must "provide information sufficient to enable the BIA to review and correct any errors below." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016) (quotation marks omitted)

## A.

We start with Marchena's argument that she was denied due process when the immigration court granted DHS's motion to change venue without giving her sufficient time to respond or granting a continuance of the final removal hearing.

It is well-established that noncitizens are entitled to due process in removal proceedings, including notice of the hearing and a meaningful opportunity to be heard. *See Reno v. Flores*, 507 U.S. 292, 309 (1993). But a procedural deprivation does not amount to a constitutional violation unless the noncitizen has suffered substantial prejudice as a result. *Garcia v. U.S. Att'y Gen.*, 329 F.3d 1217, 1222 (11th Cir. 2003). To show substantial prejudice, the

noncitizen must demonstrate that, in the absence of the alleged violations, the outcome of the proceedings would have been different. *Ibrahim v. U.S. Immigr. & Naturalization Serv.*, 821 F.2d 1547, 1550 (11th Cir. 1987).

Here, Marchena has not shown that she was substantially prejudiced by the change in venue from New Jersey to Georgia. She argues that the change of venue limited her access to her chosen counsel, but her argument primarily relates to the detention itself and the challenges posed by the COVID-19 pandemic, not the change in venue for the asylum hearing.

In any case, Marchena does not explain what evidence or argument she could have presented to change the outcome of the proceeding had it remained in New Jersey. Counsel was familiar with the details of her applications, having represented her for several years; counsel was permitted to appear at the asylum hearing by telephone, despite being based in New Jersey, and was able to offer evidence and argument; and if Marchena wished to offer additional testimony by other witnesses based in New Jersey—the content of which she does not divulge in her briefing—she could have submitted affidavits. Indeed, she previously had submitted numerous statements from various individuals in support of her applications for asylum and withholding. Accordingly, Marchena has not shown she was prejudiced by the denial of an opportunity to respond to the motion for a change of venue or by the change of venue itself.

### B.

Next, we conclude that Marchena did not exhaust her claim that the IJ and BIA failed to follow its precedent when determining whether she was convicted of a "particularly serious crime." Before explaining why, we begin with the relevant legal background.

A noncitizen is ineligible for asylum or withholding of removal if she has been convicted of a "particularly serious crime." 8 U.S.C. § 1158(b)(2)(A)(ii) (asylum); *Id.* § 1231(b)(3)(B)(ii) (withholding). What counts as a "particularly serious crime" depends, to some degree, on the form of relief. For asylum, any "aggravated felony" automatically counts as a "particularly serious crime." *Id.* § 1158(b)(2)(B)(i). But for withholding, an "aggravated felony" is not necessarily a "particularly serious crime" unless the noncitizen received a sentence of "at least 5 years." *Id.* § 1231(b)(3)(B). Nevertheless, notwithstanding the length of the sentence, the Attorney General may exercise his or her discretion to determine on a case-by-case basis whether a noncitizen has been convicted of a "particularly serious crime." *Id.*; *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). That authority has been delegated to immigration judges. *Lapaix*, 605 F.3d at 1143.

BIA precedent requires a two-step approach to making this case-by-case determination. *In re N-A-M-*, 24 I. & N. 336, 342 (BIA 2007). First, the agency looks to the elements of the offense to determine if it is potentially within the ambit of a "particularly serious crime." *Id.* If not, "the individual facts and circumstances of the offense are of no consequence." *Id.* But if the elements bring the

offense within the ambit of a "particularly serious crime," "all reliable information" may be considered about the offense, focusing on the nature of the crime as committed. *See id.*

The IJ and BIA determined that Marchena was ineligible for asylum and withholding because her conviction for conspiracy to commit aggravated assault qualified as a "particularly serious crime." Marchena does not dispute the agency's determination as it relates to asylum. But regarding withholding, she maintains that the BIA erred by failing to conduct the "threshold elements inquiry as required by BIA precedent," by first determining whether the conviction was within the ambit of a "particularly serious crime," before proceeding to analyze the underlying circumstances of the offense.

But Marchena did not properly raise this argument to the BIA. While her brief to the BIA referred to the two-step analysis and asserted that the IJ misapplied the legal standard for what qualified as a "particularly serious crime," these passing references were not sufficient to exhaust a claim that the IJ skipped the first step of the analysis. *See Jeune*, 810 F.3d at 800. The actual substance of Marchena's argument related to the second step of the analysis, specifically the IJ's assessment of the underlying facts and circumstances of the offense and the IJ's alleged failure to properly weigh the years of horrific abuse from her husband that led to the offense. But that argument did not "provide information sufficient to enable the BIA to review and correct any errors below" regarding the first step. *See id.* We therefore must conclude that Marchena failed

to exhaust her current claim and that we lack jurisdiction to review it. *See Bing Quan Lin*, 881 F.3d at 866. For that reason, we dismiss this aspect of the petition.

## C.

Finally, Marchena maintains that the agency made legal and factual errors when determining that she was not entitled to CAT relief. She asserts that the agency misconstrued the legal definition of torture and failed to give appropriate weight to the past harm she suffered in Peru.

We review factual challenges to CAT orders for substantial evidence, and the findings of fact are conclusive unless the record would compel us to conclude the contrary. *Nasrallah v. Barr*, 590 U.S. ___, 140 S. Ct. 1683, 1692 (2020). We review legal challenges *de novo*. *See Ali*, 443 F.3d at 808.

An applicant seeking CAT relief must establish "that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). In assessing the likelihood of future torture, the agency should consider all relevant evidence, including "[e]vidence of past torture inflicted upon the applicant." *Id.* § 1208.16(c)(3).

The regulations define "torture" in part as the intentional infliction of "severe pain or suffering," with certain specified motivations, at the instigation or with the acquiescence of the government. 8 C.F.R. § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting

torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7). Where a government actively combats a non-governmental group, that the government is not entirely successful in its efforts does not amount to acquiescence. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004).

Here, Marchena has not established reversible error in the BIA's denial of CAT relief. We assume without deciding that the brutal and horrific attack she suffered in 1996 rises to the level of "extreme . . . cruel and inhumane treatment" that could constitute "torture." *See* 8 C.F.R. § 1208.18(a)(2). But we must conclude that substantial evidence supports the agency's finding that the Peruvian government would not acquiesce in the harm Marchena fears she would suffer if returned to Peru. *See Reyes-Sanchez*, 369 F.3d at 1243; 8 C.F.R. § 1208.16(c)(2).

First, Marchena does not identify any evidence indicating that the Peruvian government acquiesced in the harm Shining Path members inflicted on her in Peru. While Marchena criticizes the IJ for pointing out that she did not report the attack to police, it is relevant insofar as it reflects the lack of government awareness of or involvement in her particular circumstances.

Second, and more importantly, the record supports the IJ's finding, affirmed by the BIA, that the Peruvian government does not presently acquiesce in the Shining Path's activities. *See id.* The IJ found that the Peruvian government had made "efforts to combat the terrorist groups," which Marchena does not dispute.

Although country reports reflect that the government not been entirely successful in its efforts against the Shining Path, they do not suggest that the government would acquiesce in any torture that the group might inflict on her.  Moreover, the presence of corruption and violence against women in Peru, while certainly disturbing, does not, standing alone, compel a conclusion that it would be "more likely than not" that Marchena would suffer torture by or with the acquiescence of the government or a public official.  *See* 8 C.F.R. § 1208.16(c)(2); *see id.* § 1208.18(a)(1).

For these reasons, we deny in part and dismiss in part the petition for review.

**PETITION DENIED IN PART and DISMISSED IN PART.**