[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14019

Non-Argument Calendar

_____

MAYKON DE BORBA OLIVEIRA,
JHENYFER MARIA CARVALHO OLIVEIRA,
OHANA CARVALHO OLIVEIRA,
JESSICA CARVALHO DE AQUINO,

                                                          Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                                          Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-643-849

————————————

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Maykon De Borba Oliveira, along with his wife Jessica Carvalho De Aquino, and their two minor children (collectively, Petitioners), proceeding *pro se*, seek review of the denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). After careful review, we must deny their petition.

## I.

Petitioners are citizens of Brazil who entered the United States in October 2021 without being admitted or paroled by an immigration officer. In March 2022, the Department of Homeland Security initiated proceedings to remove Petitioners under 8 U.S.C. § 1182(a)(6)(A)(i). Petitioners conceded removability and then applied for asylum and withholding of removal, and CAT protection.[1] They claimed that they feared returning to Brazil because of threats of violence from a loan shark to whom they owed money and from members of Carvalho De Aquino's uncle's former gang.

---

[1] De Borba Oliveira was designated as the lead applicant, but we refer to the application as the Petitioners' collectively.

At the merits hearing before an IJ, Carvalho De Aquino testified that, in 2012, her mother began receiving threatening letters from members of a gang after her uncle, a former gang member, began cooperating with police.  Some of the letters referenced Carvalho De Aquino and her sister, who lived with their mother, and threatened sexual violence against them.  Then, in February 2013, gang members came to their house searching for weapons hidden by her uncle, and they threatened her mother with a knife to her neck. Carvalho De Aquino moved in with De Borba Oliveria in November 2013, and she received a threatening letter at their new address in December 2014, which stated that someone in her family would pay for her uncle's errors.  In 2016, after the couple moved to another city in Brazil, she received another threatening letter, which contained pictures of her and her one-year-old daughter and stated that it was useless to try to hide.  They did not report the threats to police out of fear.

Petitioners further testified that they decided to leave Brazil because of the threats from her uncle's former gang.  They ultimately lived in Spain from 2016 to 2021.  To fund the move, they borrowed $10,000 at 10% interest from a loan shark named Eduardo Sahyoun.  But they have not repaid Sahyoun, and he threatened the couple that they would pay with their lives if they ever returned to Brazil.  Carvalho De Aquino reported that her mother and sister still lived in Brazil, and she was not aware that they had received new threats from her uncle's former gang.

Petitioners argued that they were eligible for asylum and withholding of removal as members of particular social groups, including families threatened or at risk of being killed by loan sharks, and family members of either law-enforcement witnesses generally or Carvalho De Aquino's uncle in particular. They also argued that Brazil was a corrupt country in which criminals can break the law with impunity because they have influence over the government and police. In support of their application, they submitted evidence of the uncle's criminal record, the 2021 country report on Brazil prepared by the U.S. Department of State, and a news article, among other records.

The IJ issued an oral decision denying Petitioners' application for relief from removal. The IJ found that the couple provided credible testimony but that they were not eligible for asylum for several reasons. To start, the IJ concluded that the threats and harm they experienced in Brazil did not rise to the level of persecution.

And even if the past threats amounted to persecution, the IJ continued, Petitioners failed to establish a legally cognizable "particular social group." According to the IJ, the proposed groups stemming from being under threat from a loan shark were circularly defined and not based on immutable characteristics, while the proposed groups based on being family members of a law-enforcement witness or her uncle were not socially distinct within Brazil.

Next, the IJ reasoned that, even if Petitioners' proposed groups were cognizable, they failed to establish a nexus or

connection between the harms and their membership in the groups. In the IJ's view, Petitioners were being targeted for reasons unrelated to their membership in the proposed groups. The loan shark, the IJ stated, simply wanted to be repaid, while the gang wanted to prevent her uncle from providing information to the police and was not motivated by animus toward her family.

The IJ further concluded that no evidence showed that the police were unable or unwilling to protect Petitioners from harm. The IJ noted that Petitioners never reported the threats to the police, so they never gave authorities the opportunity to protect them.

Finally, the IJ found that Petitioners had not established a well-founded fear of future persecution upon returning to Brazil. The IJ noted that Carvalho De Aquino's mother and sister still lived in Brazil and had not been harmed, and that any future mistreatment would not be on account of a protected ground. The IJ also found that Petitioners had failed to prove they could not have relocated internally, since the threats appeared to be "contained in a small town" and Brazil was "a very large country."

Because the IJ found that Petitioners were not eligible for asylum, it likewise concluded that they failed to satisfy the "higher burden of proof" for withholding of removal. The IJ also denied protection under CAT, concluding that Petitioners had not shown it was more likely than not that they would be tortured or that the government would acquiesce in their torture.

Petitioners appealed to the BIA, arguing that the IJ erred in finding they were not eligible for asylum. They contended that the prior threats rose to the level of persecution, that they had a well-grounded fear of future persecution, that their proposed social groups were cognizable, that there was a "clear nexus" between the feared harm and the proposed grounds, and that Brazilian authorities were corrupt and unable or unwilling to protect them. A single BIA member issued an order affirming the IJ's decision "without opinion," making the IJ's decision the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4).

## II.

Proceeding *pro se* on appeal, Petitioners challenge their removal proceedings on several grounds. They contend that the BIA abused its discretion and violated due process by affirming the IJ's decision without opinion. They argue that they were eligible for asylum, withholding of removal, and CAT protection. And they appear to suggest that the agency erred in failing to consider other grounds for asylum, such as political opinion, as well as other forms of relief, including cancellation of removal, administrative termination, and reopening based on changed country conditions.

When the BIA issues a summary affirmance of an IJ's opinion under 8 C.F.R. § 1003.1(e)(4), we review the IJ's opinion as the final agency decision. *See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). We review the IJ's findings of fact under the substantial-evidence test and "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence

on the record considered as a whole." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005) (quotation marks omitted). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Id.*

We review *de novo* legal conclusions, including whether a proposed particular social group is cognizable. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Likewise, we review *de novo* constitutional challenges. *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341 (11th Cir. 2003). We liberally construe the briefs filed by *pro se* parties. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## A.

To ensure due process, the BIA is required to follow its own regulations when exercising its discretion and issuing a decision. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68, (1954). Applicable regulations provide that a single BIA member may affirm an IJ's decision without opinion if he or she determines that the "result reached in the decision under review was correct" and any errors were "harmless or nonmaterial," and that

> (A) The issues are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or

(B)  The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4)(i).

We have rejected a due-process challenge to the BIA's one-judge-affirmance-without-opinion procedure. *See Lonyem*, 352 F.3d at 1342 (recognizing the Supreme Court's directive that absent constitutional constraints, "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.") (quotation marks omitted).  And we have recognized that, "under the INS regulations, no entitlement to a full opinion by the BIA exists," and that the issuance of a one-sentence order, standing alone, is not "evidence that the BIA member did not review the facts of [the petitioner's] case." *Mendoza*, 327 F.3d at 1289.

Here, Petitioners have not shown a violation of their due-process rights.  The mere fact that a single BIA member affirmed the IJ's decision without opinion under § 1003.1(e)(4) does not establish a due-process violation, *see Lonyem*, 352 F.3d at 1342, nor is it "evidence that the BIA member did not review the facts of [the petitioner's] case," *Mendoza*, 327 F.3d at 1289.  Petitioners raise no argument that their case did not meet the regulatory requirements for affirmance without opinion.  And Petitioners can still obtain meaningful appellate review because we "will continue to have the IJ's decision and the record upon which it is based available for review." *Id.* (quotation marks omitted).

**B.**

A noncitizen is eligible for asylum if she establishes that she is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To meet this burden, an applicant must provide credible evidence establishing past persecution, or a well-founded fear of future persecution, on account of a statutorily protected ground. *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964–65 (11th Cir. 2011). Similarly, under the withholding-of-removal statute, a noncitizen may not be removed if her "life or freedom would be threatened" because of a protected ground, such as membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A).

Importantly, the standards for both asylum and withholding of removal "contain a causal element known as the nexus requirement." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021). To satisfy this requirement, "[a]n applicant must establish that a protected ground 'was or will be at least one central reason for persecuting the applicant.'" *Id.* A central reason is one that "is 'essential' to the motivation of the persecutor." *Id.* "In other words, the protected ground cannot play a minor role in the [applicant's] past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (quotation mark omitted).

We have distinguished "persecution of a family as a means to an unrelated end from persecution based on animus against a family *per se*." *Sanchez-Castro*, 998 F.3d at 1287. Thus, "[w]here a gang targets a family only as a means to another end, the gang is not acting because of who the family is; the identity of the family is only incidentally relevant." *Id.* In this regard, "[e]vidence that treatment is consistent with general criminal activity does not help [an applicant] with the nexus requirement." *Id.* at 1288; *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). In *Sanchez-Castro*, for example, we held that substantial evidence supported the finding that an applicant did not meet the nexus requirement because the gang targeted her family to obtain funds, not because of any animus against her family. 998 F.3d at 1283, 1285–87.

Here, Petitioners have not shown that the IJ erred in denying their application for asylum and withholding of removal. Substantial evidence supports the IJ's finding that Petitioners did not satisfy the nexus requirement. *See id.* at 1286, 1288; *Perez-Zenteno*, 913 F.3d at 1312 ("The determination of a persecutor's motive when considering whether an alien is eligible for asylum is essentially factfinding."). Petitioners testified that the loan shark threatened them because they were unable to repay him. They also testified that their uncle's former gang threatened them to stop her uncle or her family from providing information to the police. Thus, the evidence supports a view that Petitioners were being targeted "only as a means to another end," and not "because of who the family is." *See Sanchez-Castro*, 998 F.3d at 1287. While Petitioners rely on other evidence of "general criminal activity" in Brazil,

that "does not help [Petitioners] with the nexus requirement." *Id.* at 1288.

For these reasons, we can't say that the record compels the conclusion that Petitioners' familial or other group status "was a central reason for any persecution [they] suffered or that [they] fear[]." *Id.* So under our precedent, we agree with the IJ that Petitioners were not eligible for asylum or withholding of removal on that basis. For that reason, we do not consider or resolve whether Petitioners' experiences rise to the level of persecution, whether they have a well-founded fear of future persecution, or whether their proposed particular social groups are cognizable.[2]

## C.

To be eligible for CAT protection, an applicant must establish that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). To rise to the level of torture under this provision, the harm the petitioner alleges must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

---

[2] We also note that, even liberally construing their briefing, Petitioners have abandoned any challenge to the IJ's conclusions that their proposed particular social groups were not cognizable by failing to address that issue on appeal. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). Those unchallenged conclusions independently bar Petitioners from establishing eligibility for asylum or withholding of removal.

In assessing eligibility for CAT protection, we consider all evidence "relevant to the possibility of future torture," which includes "(1) whether the applicant has experienced past torture; (2) whether she could avoid future torture by relocating within the country; and (3) evidence about wider country conditions, including whether there have been gross, flagrant or mass violations of human rights in the country." *K.Y. v. U.S. Att'y Gen.*, 43 F.4th 1175, 1181 (11th Cir. 2022), *cert. denied sub nom. K. Y. v. Garland*, 143 S. Ct. 2506 (2023). While all relevant evidence is to be considered, "[t]he evidence must demonstrate that the applicant will be specifically and individually targeted for torture." *Id.* "[E]vidence of generalized mistreatment and some isolated instances of torture" is insufficient on its own to qualify for CAT protection. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007).

Here, substantial evidence supports the IJ's denial of CAT protection. The IJ found "no evidence to show that the government would acquiesce or instigate or consent to the torture" of Petitioners. While Petitioners rely on country-conditions evidence of general crime and corruption in Brazil, such generalized evidence does not compel the conclusion that Petitioners faced any individualized risk of torture by or with the acquiescence of Brazilian authorities. *See K.Y.*, 43 F.4th at 1181. And "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007).

**D.**

Finally, Petitioners make several new claims that they did not present to the agency. They reference (a) cancellation of removal, *see* 8 C.F.R. § 1229b, citing their good moral character and the hardship they would suffer from removal; (b) termination of proceedings under *Niz-Chavez v. Garland*, 593 U.S. 155 (2021); (c) discretionary "administrative closure"; (d) reopening the removal proceeding based on changed country conditions; and (e) remand for additional asylum proceedings, including based on De Borba Oliveira's "anti-crime" political opinions.

"A petitioner contesting a final order of removal must exhaust the administrative immigration process before he may be heard in federal court." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 866 (11th Cir. 2018). "[F]ailure to raise an issue to the BIA constitutes a failure to exhaust." *Id.* at 867. Failure to exhaust is not jurisdictional, but it nonetheless must be enforced when a party asserts it. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) (citing *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023)).

Here, as the government asserts in its brief, Petitioners failed to exhaust these claims and arguments for relief by presenting them to either the IJ or the BIA. *See Bing Quan Lin*, 881 F.3d at 866. Accordingly, we cannot consider these additional grounds for relief at this time. *See id.*

## III.

For these reasons, we deny the petition for review.

**PETITION DENIED.**